# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

APRIL MARIE FOSTER,

        Defendant-Appellant.

UNPUBLISHED
January 15, 2015

No. 317444
Wayne Circuit Court
LC No. 12-010749-FC

Before: FORT HOOD, P.J., and HOEKSTRA and O'CONNELL, JJ.

PER CURIAM.

Defendant appeals as of right her jury trial convictions of first-degree felony murder, MCL 750.316(1)(b), first-degree child abuse, MCL 750.136b(2), third-degree child abuse, MCL 750.136b(5), and two counts of torture, MCL 750.85(1). The trial court sentenced defendant to life in prison without parole for the first-degree felony murder conviction, five to 15 years' imprisonment for the first-degree child abuse conviction, one to two years' imprisonment for the third-degree child abuse conviction, and 18 to 40 years' imprisonment for each of the two torture convictions. For the reasons explained in this opinion, we affirm.

Defendant's convictions arise from the death of her six-year-old daughter, AJ. The evidence at trial established that defendant and co-defendant David Hairston subjected AJ and AJ's sister, KJ, to grievous physical abuse and neglect. As a consequence of this abuse and neglect, AJ then died of "bilateral bronchial pneumonia associated with neglect and abusive injuries." More specifically, at trial, a forensic pathologist explained that AJ's extensive physical injuries and her history of neglect left her in a weakened physical state which prevented her body from fighting off the pneumonia. Defendant and Hairston were tried jointly before one jury, and both were convicted.[1] Defendant now appeals as of right.

## I. SEPARATE TRIALS

---

[1] Like defendant, Hairston was convicted of first-degree felony murder, first-degree child abuse, third-degree child abuse, and two counts of torture.

On appeal, defendant first contends that her constitutional rights to due process and a fair trial were violated because she was tried jointly with Hairston. In particular, defendant argues that she and Hairston presented mutually antagonistic defenses warranting separate trials. She further alleges that she was unfairly prejudiced because the prosecutor and trial court acknowledged no distinction between defendant and Hairston at trial, but instead improperly acted as though, in defendant's words, she and Hairston were "a one-brained being acting through two people." In the alternative, defendant argues that her trial counsel rendered ineffective assistance by failing to move for severance of her trial or for a separate jury. We disagree with defendant in all respects.

Defendant did not move the trial court for separate trials. Absent such a motion in the trial court, appellate review is precluded. *People v Daniel*, 207 Mich App 47, 53; 523 NW2d 830 (1994) ("Failure to move for a separate trial precludes appellate review."). Were we to consider the matter, it is clear that defendant has not shown severance was necessary to prevent prejudice to her substantial rights and she is not entitled to relief on this basis.

"On a defendant's motion, the court must sever the trial of defendants on related offenses on a showing that severance is necessary to avoid prejudice to substantial rights of the defendant." MCR 6.121(C). However, severance is required under MCR 6.121(C) "only when a defendant provides the court with a supporting affidavit, or makes an offer of proof, that clearly, affirmatively, and fully demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice." *People v Hana*, 447 Mich 325, 346; 524 NW2d 682 (1994), amended 447 Mich 1203; (1994). Moreover, the presentation of inconsistent defenses or "incidental spillover prejudice, which is almost inevitable in a multi-defendant trial," will not suffice to merit separate trials. *Id.* at 349 (citation omitted). Further, defendants are not entitled to severance merely because they "may have a better chance of acquittal in separate trials," because the defendants "may attempt to escape conviction by pointing the finger at each other," or simply because another defendant may testify at trial. *Id.* at 349-350 (citations omitted). Rather, to warrant severance, the defenses presented must be "mutually exclusive" or "irreconcilable," meaning that the "jury, in order to believe the core of the evidence offered on behalf of one defendant, must disbelieve the core of the evidence offered on behalf of the co-defendant." *Id.* at 349-350 (citations omitted).

In the present case, defendant and Hairston did not present irreconcilable defenses meriting separate trials. On the contrary, the main argument presented by both defendant and Hairston was that the children had not been abused and that KJ fabricated her testimony regarding the abuse she and AJ suffered. Further, both defendant and Hairston pursued the argument that AJ died from natural causes. In particular, Hairston vigorously pursued the theory that AJ died from pneumonia, not because of abusive injuries which lessened her ability to fight infection, but because she had a deficient thymus gland. Likewise, although defendant's counsel did not focus on this possibility in her arguments, her defense counsel questioned Hairston's expert, Dr. Ljubisa Jovan Dragovic, an expert in forensic pathology and neurology, on whether AJ would have a hard time fighting off pneumonia because she lacked a thymus gland. In closing argument, defendant's counsel then maintained that defendant had done everything reasonable under the circumstances to treat AJ's pneumonia symptoms and should not be found guilty of murder. In short, both defendant and Hairston maintained that the abuse did not occur

-2-

and that AJ's died from natural causes. There was nothing antagonistic or irreconcilable about these arguments.

In addition to his claim that no abuse occurred, Hairston also denied living in the home with the children and he maintained that he lacked control or authority over the children. According to defendant, if the jury believed Hairston in this regard, the only remaining inference to be drawn was that defendant perpetrated the abuse. Contrary to defendant's argument, Hairston's denial of control over the children was not inconsistent with defendant's main theory that the children had not been abused and that AJ died from natural causes. The jury could have believed Hairston's theory that he had no access to the children, and therefore, he could not have abused either child, as well as defendant's theory that any injuries were accidental and AJ died as a result of pneumonia due to her weakened immune system. Thus, the jury could have believed the core of both defendant's and Hairston's legal theories at trial. See *Hana*, 447 Mich at 349-350. Moreover, to the extent Hairston's denial of control over the children was arguably at odds with defendant's efforts at trial to attribute the worst of any potential abuse to Hairston, we note that finger pointing such as this by co-defendants does not create mutually exclusive antagonistic defenses where, as in this case, the jury was instructed on an aiding and abetting theory. *Id.* at 360-361. In such circumstances, no prejudice is created by finger pointing because "[t]he properly instructed jury could have found both defendants similarly liable without any prejudice or inconsistency because one found guilty of aiding and abetting can also be held liable as a principal." *Id.* In other words, defendant has not shown the existence of prejudice because she would have been properly found guilty whether the jury believed she merely aided Hairston or whether they believed she personally conducted the abuse. In short, defendant has not shown the existence of mutually exclusive antagonistic defenses and she is not entitled to relief on this basis.

In a related argument, defendant also contends that she was prejudiced by the trial court's failure to sever the trials because the prosecutor improperly treated defendant and Hairston as one entity during trial and the trial court repeatedly and consistently erred in referring only to "the defendant" in his post-trial jury instructions.

To the extent defendant seeks to challenge the trial court's jury instructions, she waived any such argument when her trial counsel expressed satisfaction with the instructions at trial. *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). In any event, even when imperfect, jury instructions are not grounds for reversal when the instructions "fairly presented the issues to be tried and adequately protected the defendant's rights." *Id.* at 501-502. Considering the instructions in the case as a whole, it is clear that defendant's claim of instruction error is without merit.

For example, contrary to defendant's arguments, on numerous occasions throughout the instructions, the trial judge made it clear that each defendant was to be judged separately, and even caught himself when he mistakenly referred to a single defendant:

> A person accused of a crime is presumed to be innocent. This means that you
> must start with the presumption the defendant is innocent -- defendants, plural --
> is innocent. This presumption continues throughout the trial and entitles the

defendants to a verdict of not guilty unless you're satisfied beyond a reasonable doubt that he or she is guilty.

Further, any confusion that the jury may have had on this point was cured by the trial court's thorough and specific instruction on the necessity of evaluating Hairston and defendant individually. In particular, the trial court instructed the jury as follows:

[Defendant] and David Hairston are both on trial in this case. The fact that they are on trial together is not evidence that they were associated with each other or that either one is guilty. You should consider each defendant separately. Each is entitled to have his or her case decided on the evidence and the law that applies to them. If any evidence was limited to one defendant, you should not consider it as to the other defendant.

In short, defendant is not entitled to reversal of her convictions based on the trial court's references to "the defendant."

Likewise, we discern no misconduct in the prosecutor's arguments based on defendant's assertion that the prosecutor failed to sufficiently distinguish between defendant and Hairston. "The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *People v Abraham*, 256 Mich App 265, 272; 662 NW2d 836 (2003). We review a prosecutor's remarks in context in light of defense arguments and the evidence admitted at trial. *People v Callon*, 256 Mich App 312, 330; 662 NW2d 501 (2003). "[A] prosecutor is free to argue the evidence and any reasonable inferences that may arise from the evidence." *Id.* Moreover, "we cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *Id.* at 329-330.

Here, consistent with the evidence presented, the prosecutor argued that defendant and Hairston acted jointly in abusing, neglecting, and torturing AJ and KJ. There was nothing improper in this argument. Further, to the extent, if at all, that the prosecutor's argument blurred the distinction between conduct committed by defendant as opposed to Hairston, any prejudicial effect could have been alleviated with a curative instruction and, as noted, the jury was in fact instructed to consider Hairston and defendant separately. This Court has routinely held that "[j]urors are presumed to follow their instructions, and instructions are presumed to cure most errors." *Abraham*, 256 Mich App at 279. Thus, defendant is unable to show prejudice and she is not entitled to relief on this basis.

Related to her claim that separate trials should have been held, defendant also argues that her trial counsel rendered ineffective assistance by failing to move for severance of her trial or, at a minimum, to move for a separate jury.

Defendant failed to move the trial court for a new trial or an evidentiary hearing, meaning that her claim of ineffective assistance is unpreserved. *People v Rodriguez*, 251 Mich App 10, 38; 650 NW2d 96 (2002). "Where claims of ineffective assistance of counsel have not been preserved, our review is limited to errors apparent on the record." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

In order to show ineffectiveness of counsel, a defendant must show that: (1) counsel's performance did not meet an objective standard of reasonableness under prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's errors, the results of the proceedings would be different. *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving that counsel's actions were not based on reasonable trial strategy. *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). This Court will not substitute its judgment for that of trial counsel on matters of strategy, nor will we employ the benefit of hindsight to assess the competence of counsel. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). Defendant has the burden of establishing the factual predicate of his claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). "Ineffective assistance of counsel cannot be predicated on the failure to make a frivolous or meritless motion." *People v Riley*, 468 Mich 135, 142; 659 NW2d 611 (2003).

As noted *supra*, severance is required under MCR 6.121(C) "only when a defendant provides the court with a supporting affidavit, or makes an offer of proof, that clearly, affirmatively, and fully demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice." *Hana*, 447 Mich at 346. In this case, defendant has not shown that defense counsel could have presented the trial court with an affidavit or offer of proof demonstrating that defendant's substantial rights would be prejudiced by a joint trial. On the contrary, as discussed, defendant and Hairston did not present irreconcilable defenses that would have merited severance under MCR 6.121(C), particularly given that the jury was instructed on an aiding and abetting theory of liability. See *Hana*, 447 Mich at 360-361. Because defendant and Hairston did not offer incompatible defenses, defendant has not shown any likelihood that a defense counsel motion to sever the defendants for trial would have been meritorious, and defense counsel cannot be considered ineffective for failing to make a meritless motion on this basis. See *Riley*, 468 Mich at 142.

Further, defendant has not overcome the presumption that any decision by trial counsel regarding whether to move for severance or separate juries was a matter of trial strategy. See *Cline*, 276 Mich App at 637. Given that Hairston and defendant both argued that no abuse occurred and that AJ died of natural causes, defendant's counsel may have reasonably viewed a joint trial with one jury as a suitable opportunity to cast reasonable doubt on whether abuse occurred. Moreover, defense counsel could also have reasonably concluded that a single trial and a single jury would allow for an opportunity to attempt to mitigate defendant's liability by providing the jury an opportunity to solely blame Hairston for all of the abuse, especially when KJ described Hairston as the main attacker. On the record presented, defendant has not met her burden of showing either that defense counsel's conduct fell below an objective standard of reasonableness or that defendant was prejudiced by defense counsel's conduct.

## II. PROSECUTORIAL MISCONDUCT

Defendant next contends that the prosecutor committed misconduct during her closing argument. In particular, defendant contends that the prosecutor improperly encouraged the jury to rely on the prestige of the prosecutor's office and to do "justice for [the] children."

-5-

A claim of prosecutorial misconduct generally must be met with a contemporaneous objection or a request for a curative instruction. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Because defendant never objected to any of the alleged instances of prosecutorial misconduct, this issue is unpreserved. *Id.* Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting a defendant's substantial rights. *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). Reversal is warranted only when plain error resulted in the conviction of an innocent person, or seriously affected the fairness, integrity, or public reputation of the proceedings. *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008). Reversal is not appropriate where a curative instruction could have alleviated any prejudicial effect. *Callon*, 256 Mich App at 329-330.

"[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). Prosecutorial misconduct issues are decided on a case-by-case basis, evaluating a prosecutor's remarks in context. *People v Mann*, 288 Mich App 114, 119; 792 NW2d 53 (2010). Prosecutorial comments must be evaluated in the light of defense arguments and the relationship they bear to the evidence admitted at trial. *Brown*, 279 Mich App at 135. A prosecutor may not ask the jury to convict by invoking the prestige of her office. *Matuszak*, 263 Mich App at 54-55. "A prosecutor may not appeal to the jury to sympathize with the victim. Nor may a prosecutor urge the jury to convict as part of its civic duty or on the basis of its prejudices." *Unger*, 278 Mich App at 237 (citations omitted). Although a prosecutor's request for the jury to "do justice" may tend to improperly appeal to the juror's sympathies, such argument may nonetheless be permissible if, when examined in context, the request for justice is tied to the evidence presented at trial. See *People v Hedelsky*, 162 Mich App 382, 385-386; 412 NW2d 746 (1987).

Defendant bases her claim of prosecutorial misconduct on comments made by the prosecutor during closing arguments. In the prosecutor's rebuttal argument, she stated the following, to which defendant objects:

> [W]hat Flint did is -- has nothing to do with this case at all -- at all with the Flint Police.
>
> What happened here is that about ten months ago, Sergeant [Samuel] Mackie[2] and I, we sat down and we reviewed this case. And we looked at what we had and we decided, ladies and gentlemen, that we would try to be the voice that [AJ] never had.
>
> We would try to give [KJ] a voice.
>
> We would try to get justice for the murder of this little girl, for the abuse and torture that they underwent.

---

[2] Sergeant Samuel Mackie was a police officer with the homicide division of the Detroit Police Department.

And we can't bring them back, but we can ask you for justice and that's what we're doing here today, because we have done our best to present the evidence. It's now in your hands.

And I am asking you on behalf of [KJ], on behalf of [AJ], to find them guilty of murder, child abuse, and torture. Because the evidence proves it, because that's what they do, and because that is justice for those children.

First, defendant claims that the prosecutor's comments regarding her actions with Sergeant Mackie were an improper attempt to imply that her position gave her special insight or power, and thus, the prosecutor improperly relied on the prestige of her office. *Matuszak*, 263 Mich App at 54-55. Contrary to defendant's argument, the prosecutor's remarks were not an effort to invoke the prestige of the prosecutor's office or claim special knowledge, but a proper response to an argument raised by Hairston. Namely, during closing, Hairston's attorney noted that the investigation initially began in Flint where AJ died and that authorities in Flint had not identified Hairston as a perpetrator in the offenses. Given this argument by Hairston, the prosecutor could properly point out that the matter had been independently reviewed by Detroit authorities and that the Flint investigation "has nothing to do with this case at all."[3] Taken in context, this was a fair response to defense arguments and it did not deprive defendant of a fair trial. See *Brown*, 279 Mich App at 135.

Defendant next contends that the prosecutor's statement constituted prosecutorial misconduct because she asked the jury to "follow her lead," and find justice for AJ and KJ by convicting defendant and Hairston. However, and as noted above, a prosecutor's request that a jury "do justice" is not improper if it is tied to a request to do justice based on the evidence. *Hedelsky*, 162 Mich App at 385-386. Here, the prosecutor explicitly stated that she wanted the jury to find defendant and Hairston guilty of the crimes alleged "[b]ecause *the evidence proves it* . . . and because that is justice for those children." It is clear from the context of the prosecutor's statement and her closing argument as a whole that her request for the jury to "do justice" was directly tied to the evidence. *Id.* Further, any prejudice could have been alleviated by a timely requested curative instruction, *Callon*, 256 Mich App at 329-330, and the trial court in fact expressly instructed the jury that "[t]he lawyers' statements and arguments are not evidence." Defendant has not shown plain error in the prosecutor's remarks and she is not entitled to relief on this basis.

### III. CUMULATIVE ERROR

---

[3] Similarly, the prosecutor also argued during rebuttal:

And yeah it took a bit of time, ladies and gentlemen, to identify Mr. Hairston because we didn't -- he didn't talk to the police right away. And in Flint they . . . took [KJ], you know, for forensic interviews and they had to review it and figure out what was going on and who was who and so on. But that doesn't prove anything, it's the evidence in this case that proves it.

Finally, defendant claims that the cumulative effect of the errors alleged above combined to deprive defendant of a fair trial.

This Court reviews a claim of cumulative error to determine whether the combination of alleged errors denied the defendant a fair trial. *Dobek*, 274 Mich App at 106. "The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted." *Id.* Absent a finding of any error there, of course, can be no cumulative effect of errors meriting reversal. *People v Mayhew*, 236 Mich App 112, 128; 600 NW2d 370 (1999).

> [I]ndividual claims of error either have merit or they do not. A ruling or action that is almost wrong does not become an error on the ground that, in the same case, other rulings or actions were almost wrong, too. . . . Only the unfair prejudice of several *actual* errors can be aggregated . . . . [*People v LeBlanc*, 465 Mich 575, 591-592 n 12; 640 NW2d 246 (2002).]

As noted above, defendant's individual claims are without merit. Because there was no finding of error in any of defendant's individual claims, there cannot be cumulative error. *Mayhew*, 236 Mich App at 128.

Affirmed.

/s/ Karen M. Fort Hood
/s/ Joel P. Hoekstra
/s/ Peter D. O'Connell