# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ANDREW FRANKLIN WOODBURN,

Defendant-Appellant.

UNPUBLISHED
July 21, 2016

No.  320718
Cheboygan Circuit Court
LC No.  13-004757-FC

Before:  STEPHENS, P.J., and SERVITTO and GLEICHER, JJ.

PER CURIAM.

Defendant was convicted following a jury trial of assault with intent to murder, MCL 750.83, and felon in possession of a firearm, MCL 750.224f.  The trial court sentenced defendant as an habitual offender, third offense, MCL 769.12, to prison terms of 17 to 35 years for the assault with intent to murder conviction and 3 to 10 years for the felon-in-possession conviction.  This Court granted defendant's motion to remand for a *Ginther*[1] hearing and to allow defendant to file a motion for resentencing.[2]  On remand, the trial court denied defendant's motion for a new trial and granted the motion for resentencing.  The trial court then resentenced defendant to terms identical to those imposed under the initial sentencing.  Defendant now appeals as of right. We affirm.

## I.  FACTS

On June 23, 2013, defendant's mother, Sharon Woodburn, called 911 and reported that her son was not in his right mind and violent, and that she needed police assistance at her home. She, her husband, and defendant lived on Black River Trail.  She informed the 911 dispatcher that she had lied to defendant and told him that certain guns he was looking for were in Gaylord and that he was going to go to Gaylord to get them.  She testified that she had turned two pistols and a rifle belonging to her and her husband over to a neighbor for safekeeping two days before

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] *People v Woodburn,* unpublished order of the Court of Appeals, entered April 24, 2015 (Docket No. 320718).

the incident. She told the dispatcher that defendant was "going through like a psychotic episode" and said "he will kill anybody that's in his way . . . ." She stated that "[h]e's gonna try to have the officers kill him . . . . Because it's like a suicide." She also said that defendant "has a machete and he probably has knives. . . . [H]e'll want to go down shooting; although he doesn't have his guns, so—he'll expect you guys to shoot him." Sharon told the dispatcher that defendant was driving a Ford F250 pickup truck with a camper shell on the back. Defendant can be heard on the tape of the 911 call saying, "I tell you what: You call the cops on me, (inaudible) dead. Dead. (Inaudible)."

Deputy Darren LaChapelle responded to the 911 call in a marked Crown Victoria patrol car. When he arrived near Black River Trail, he turned off his siren and overhead lights and pulled off to the side of Black River Road, just north of Black River Trail, to wait for an additional unit before responding directly to the residence. LaChapelle described Black River Trail as a private one-lane gravel driveway that dead-ends into Black River Road. LaChapelle could see defendant's pickup truck traveling down Black River Trail toward Black River Road. LaChapelle pulled his patrol car one or two vehicle lengths onto Black River Trail and reactivated his emergency overhead lights in the hope of stopping the truck, which at that point was 300 to 400 yards down Black River Trail. He observed defendant throw something out of the driver's window onto the grass and noticed the truck beginning to accelerate as it got closer to him. LaChapelle estimated that the pickup was traveling at least 60 miles per hour when he realized that the truck was not slowing down or attempting to maneuver around him. LaChapelle immediately put his car into reverse in an attempt to back out of the driveway, but his tires spun on the gravel roadway. The truck struck the patrol car head-on, pushing the patrol car onto Black River Road, where it was struck in the rear by a southbound car driven by Angela Ortiz and occupied by her husband, her daughter, and her daughter's friend. The Ortiz car landed in the ditch before being struck by the pickup truck. A number of eyewitnesses testified that defendant's pickup truck accelerated as it went down Black River Trail, and that it crashed head-on into the patrol car. Sergeant Charles Beckwith, an accident reconstructionist, conducted an investigation of the scene and drew the following conclusions:

> The pickup truck was eastbound on Black River Trail. The cruiser was initially westbound on Black River Trail. And at a point when the officer, I believe, believed that he was going to be impacted, he went from a forward gear to a reverse gear, and that during that reverse gear, he accelerated extremely hard which created the acceleration marks, the short acceleration marks of that patrol car trying to go backwards, and during the course of that event the patrol car was impacted.

Defendant initially refused LaChapelle's orders to get out of the truck, but eventually rolled out of the truck. As he was walking toward the back of the truck, defendant was screaming, "Just shoot me." LaChapelle tased defendant and Sergeant Mark Tamlyn handcuffed him. Tamlyn testified that defendant smelled of alcohol but that he did not appear to be intoxicated. Evidence recovered from the scene included numerous knives that had been removed from defendant's truck.

Defendant testified that he took his prescription medications, Paxil and Ativan, and consumed a bottle of rum on June 23 before getting into an argument with his father and leaving

the house determined to go to Gaylord and get his guns so that he could go to Florida and make money by killing feral hogs. He indicated that he remembered pushing on the gas, "almost on purpose to sling dirt," and that he smashed into some posts and hit a culvert as he was going down Black River Trail. According to defendant, when he saw the patrol car he was afraid of "getting pulled over for a DUI" so he began to throw empty liquor bottles out the window. He testified that he knew "that the accelerator was being mashed on at points, being stomped on." He explained that as he was reaching down and grabbing the empty bottles he "probably pushed on the accelerator," and that it "didn't even come across my mind to brake." Defendant testified that "for some reason" he thought he "might just be able to pass this officer and he wouldn't pull me over." He indicated that he did not intend to kill LaChapelle; rather, his intent was to "get out of Michigan." Defendant also testified that he still had a number of items in his truck from his move to Michigan a month earlier, including his knife collection. Defendant testified that he neither owned nor possessed any firearms on June 23, 2013.

## II. ANALYSIS

### A. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Defendant raises several claims of ineffective assistance of counsel. Defendant preserved this issue by filing a motion to remand the case for an evidentiary hearing, which this Court granted. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). The trial court's findings of fact are reviewed for clear error, while constitutional issues are reviewed de novo. *Id.* Clear error exists when this Court is left with a definite and firm conviction that a mistake has been made. *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011).

"To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id.*

The prosecution theory of the assault with intent to murder charge was that defendant intentionally drove his truck into LaChapelle's patrol car with an intent to kill the officer. In light of the eyewitness statements, LaChapelle's statement, and Beckwith's report, defense counsel focused on disputing the intent to kill by highlighting defendant's actions preceding the collision.

Defendant first claims that defense counsel failed to consult and retain an expert on accident reconstruction. "An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). Counsel is presumed to employ effective trial strategy, and it is a heavy burden for a defendant to prove otherwise. *Id.* "In general, the failure to call a witness can constitute

ineffective assistance of counsel only when it deprives the defendant of a substantial defense." *Id.* (internal quotation marks and citation omitted).

In support of his argument that defense counsel should have presented an expert in accident reconstruction, defendant relied on a post-conviction investigation report regarding the collision prepared by Kevin Armstrong that criticized the prosecution expert's investigation. At the evidentiary hearing, the trial court found that Armstrong's report did not disclose any new information that would have impeached the prosecution's theory in light of the eyewitnesses' testimony, which was consistent with the prosecution's expert's reconstruction of the accident, and the fact that defendant never claimed to have had any mechanical issues with the truck. Defendant contends that the trial court's finding is erroneous because Armstrong's report identifies deficiencies in the prosecution expert's investigation. Even assuming such deficiencies existed, defendant fails to explain how the failure to present a defense expert on accident reconstruction denied him of a substantial defense. Rather, he simply concludes that "Mr. Armstrong's report proves that there was significant expert evidence that could have been used to disprove or undermine the prosecution's case." Defendant's argument is further undermined by the fact that he never alleged that he had any mechanical difficulties with the truck or with the brakes. Indeed, defendant testified that he "stomped on the accelerator" and that he did not even think to brake.

Defendant has failed to demonstrate that he was denied a substantial defense by counsel's failure to retain an expert in accident reconstruction in light of counsel's strategy and defendant's testimony. Further, even assuming that counsel's performance fell below an objective standard of reasonableness, given the testimony of the eyewitnesses and LaChapelle, it is unlikely that the result of the proceedings would have been different had defendant retained an expert in accident reconstruction.

Defendant next claims that defense counsel was ineffective for failing to stipulate that defendant had a prior felony conviction with respect to the felon-in-possession charge. Defense counsel testified at the *Ginther* hearing that he thought it would enhance defendant's credibility to let the jury know that he had pleaded guilty in the past when he was guilty and that he was going to trial in this case because he was not guilty. Defense counsel also testified that he believed that an objection to admission of the nature of the felony conviction would have been futile.

When a defendant is charged with felon in possession of a firearm, it is permissible for a defendant to stipulate to the existence of a prior felony conviction without disclosing the nature of the prior conviction. *People v Swint*, 225 Mich App 353, 377-379; 572 NW2d 666 (1997). Thus, the trial court did not clearly err in finding that defense counsel's erroneous belief that it would have been futile to request a stipulation weighed into his decision to allow the jury to learn of the nature of the prior felony conviction and that counsel's performance was not sound trial strategy.

The trial court also did not clearly err, however, in finding that the result of the proceedings would not have been different had trial counsel approached this matter differently. The evidence that defendant drove at a high rate of speed directly into LaChapelle's police car without braking was supported by the testimony of the eyewitnesses, LaChapelle, and even

defendant. Coupled with the 911 call, this evidence provided overwhelming proof of defendant's intent to kill.

Defendant also claims that defense counsel was ineffective by failing to move to sever the felon-in-possession charge. Defense counsel testified at the *Ginther* hearing that his strategy was to show that (consistent with Sharron Woodburn's testimony) defendant's parents owned the firearms, that defendant had no firearms in his possession, that the charge was specious, and that the prosecution was overreaching. He further explained that he hoped the jury would then reach a verdict and find defendant guilty of the firearms offense but not guilty of assault with intent to murder. The trial court concluded that defendant presented a strong argument that the charges should have been severed, but that defendant failed to overcome the strong presumption that counsel's performance was based on sound trial strategy. In light of defense counsel's stated strategy, the trial court did not clearly err by finding that defense counsel's performance was the result of sound trial strategy.

Next, defendant argues that defense counsel was ineffective for withdrawing his relevancy objection to the admission of evidence of his knife collection. Defense counsel explained at the *Ginther* hearing that he withdrew his objection after conferring with defendant because he felt that he "could play into the jury's hands" because the prosecutor was "attempting, with a very broad brush, to paint defendant as a bad man when it was simply knives that he had collected over the years." The trial court found that defense counsel was clearly aware of the relevancy issue concerning the knives and made a strategic decision to allow the evidence to come in.

It appears from defense counsel's comments on the record that he did, in fact, confer with defendant before making the decision to withdraw the objection to the relevancy of the evidence and the record reveals that counsel did pursue his stated strategy. The trial court did not clearly err in finding that counsel employed a sound trial strategy in withdrawing his objection to admission of the evidence.

Lastly, defendant argues that the cumulative impact of defense counsel's errors deprived him of his constitutional right to a fair trial. "The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted." *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007).

Here, defendant has failed to demonstrate the existence of multiple errors. The only decision made by counsel that cannot be justified as a strategic decision was the failure to stipulate to the existence of a prior felony conviction without disclosing the nature of the prior conviction. And even this error was harmless in light of the weight of the evidence adduced at trial. Thus, there can be no cumulative effect that denied defendant a fair trial. *People v Mayhew*, 236 Mich App 112, 128; 600 NW2d 370 (1999).

-5-

## B. SENTENCE

Defendant argues that he is entitled to resentencing because his minimum sentence of 204 months, while being within the guidelines minimum sentence range of 126 to 315 months, was not individualized and that a more lenient sentence is appropriate. Where a trial court does not depart from the recommended minimum sentencing range, the minimum sentence must be affirmed unless there was an error in the scoring of the guidelines. *People v Schrauben*, ___ Mich App ___; ___ NW2d ___ (2016) (Docket No. 323170); slip op at 6, lv pending. Defendant does not argue that the trial court relied on inaccurate information in resentencing him or that there was an error in the scoring of the guidelines. Thus, under *Schrauben*, this Court must affirm the sentence. *Id*. at ____; slip op at 6-7. Further, the minimum sentence of 204 months was quite appropriate given the offense and defendant's status as a third-habitual felony offender.

Affirmed.


/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto
/s/ Elizabeth L. Gleicher

-6-