PEOPLE v MAYHEW

Docket No. 202997. Submitted January 12, 1999, at Detroit. Decided June 8, 1999, at 9:05 A.M. Leave to appeal sought.

Micah V. Mayhew was convicted by a jury in the Oakland Circuit Court, Deborah G. Tyner, J., of involuntary manslaughter, three counts of felonious driving, possession of marijuana, and operating a vehicle while his license was suspended. The charges against the defendant arose out of a motor vehicle accident in which one person died. He appealed.

The Court of Appeals *held*:

1. The court properly denied the defendant's motion to suppress urine test evidence showing the presence of marijuana-related tetrahydrocannabinol (THC). MCL 257.625a(6)(a); MSA 9.2325(1)(6)(a) allows the results of the defendant's urine test to be admitted into evidence. The provisions of MCL 257.625a(6)(e); MSA 9.2325(1)(6)(e) are not applicable in this case because those provisions refer to blood samples and their chemical analysis, without any mention of urine samples or urinalysis. There is no incompatibility between subsections 6(a) and 6(e) under the facts of this action.

2. Although information relating to medical treatment generally falls under the physician-patient privilege and remains confidential, an expectation of privacy regarding urine test results, following an automobile accident and obtained for purposes of medical treatment, is not reasonable. The defendant has no standing to challenge the government action in securing the test results from the hospital.

3. The court did not abuse its discretion in admitting evidence that marijuana was found in the defendant's jacket after the accident and that marijuana-related THC was detected in his urine. The evidence was relevant in establishing the elements of a charged offense and was probative of the issue whether the defendant possessed marijuana. The evidence did not invoke extraneous considerations into the matter and was not unfairly prejudicial to the defendant.

4. Any prejudice resulting from certain comments by the prosecutor could have been cured by an instruction, had the defendant

objected. A miscarriage of justice will not result from failure to further review the issue.

5. There was sufficient evidence of malice presented to support the decision to bind the defendant over for trial with regard to the charge of second-degree murder. The trial court properly denied the defendant's motion to quash.

6. The evidence was sufficient to allow the jury to find the essential elements of the second-degree murder charge proved beyond a reasonable doubt. The court properly denied the defendant's motion for a directed verdict with regard to that charge.

7. The court did not err in denying the defendant's motion to disqualify, on the basis of a conflict of interest, the entire Oakland County Prosecutor's Office from prosecuting the case. Although there was a conflict of interest with regard to one employee, that employee had nothing to do with the prosecution of the matter and had no supervisory or policy-making authority over the attorneys who were prosecuting the defendant.

Affirmed.

1. STATUTES — CONSTRUCTION.

A specific subsection of a statute must be considered as an exception to a general subsection of the statute only if a conflict or inconsistency exists between the subsections.

2. EVIDENCE —URINE TEST RESULTS — MOTOR VEHICLE OPERATORS.

MCL 257.625a(6)(a); MSA 9.2325(1)(6)(a) allows the results of a urine test to be admitted into evidence to show the amount of alcohol or presence of a controlled substance in the urine of a motor vehicle operator; MCL 257.625a(6)(e); MSA 9.2325(1)(6)(e) refers to blood samples and their chemical analysis and says nothing regarding urine tests; subsection 6(e) does not disallow the admission into evidence of urine test results or otherwise contradict or present a conflict with subsection 6(a) with regard to the admission of urine test results into evidence.

3. SEARCHES AND SEIZURES — URINE TESTS — MOTOR VEHICLE OPERATORS.

A motor vehicle operator involved in an accident has no reasonable expectation of privacy with regard to the results of a urine test taken following the accident for purposes of medical treatment and has no standing to challenge the government's action in securing those results from the hospital.

4. HOMICIDE — SECOND-DEGREE MURDER — MALICE.

Malice sufficient to support a conviction of second-degree murder can be inferred from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm; second-

degree murder does not require an actual intent to harm or kill, but only the intent to do an act that is in obvious disregard of life-endangering consequences (MCL 750.317; MSA 28.549).

5. PROSECUTING ATTORNEYS — CONFLICTS OF INTEREST.

The question whether an entire prosecutor's office must be disqualified from prosecuting a defendant arises once a determination has been made by a court that a conflict of interest exists with regard to a specific prosecutor in that office; recusal of the entire office is likely to be necessary if the prosecuting attorney concerned with the conflict of interest has supervisory or policy-making authority over other attorneys in the office who are prosecuting the defendant.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *David G. Gorcyca*, Prosecuting Attorney, *Daniel L. Lemisch*, Chief, Appellate Division, and *Robert C. Williams*, Assistant Prosecuting Attorney, for the people.

*John D. Lazar*, for the defendant on appeal.

Before: SAWYER, P.J., and BANDSTRA and R.B. BURNS*, JJ.

BANDSTRA, J. In this case, we are asked to decide, in addition to other issues, whether urine test evidence showing the presence of marijuana-related tetrahydrocannabinol[1] (THC) is admissible under MCL 257.625a(6); MSA 9.2325(1)(6). We conclude that the results of defendant's urine test were properly admit-

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

[1] Tetrahydrocannabinol is the active ingredient in marijuana.

ted into evidence pursuant to MCL 257.625a(6)(a); MSA 9.2325(1)(6)(a).

I

This case arises from a multivehicle motor vehicle accident that resulted in one death and several injuries. On the day of the accident, defendant, a high school student, took his vehicle to an oil change shop before going to school. Defendant was informed by an employee there that the sway bar was hanging loose on the rear end of the vehicle. The employee explained to defendant that driving too fast or making sharp turns while the sway bar was loose could cause the rear end of the vehicle to fishtail and cause an accident. The employee showed defendant the loose sway bar, informed him that the sway bar helps to keep the rear of the vehicle stable, and told him that he should get the sway bar fixed. The oil change shop was not in the business of doing this type of repair work, and defendant left the shop with the sway bar still loose. Defendant did not ask how fast he could drive.

Defendant then went to school. After a few hours, defendant and a few friends left school and were on their way to get parts for defendant's vehicle when the accident occurred. Numerous witnesses to the accident testified at trial that just before the accident, defendant was speeding and weaving through traffic. The accident occurred when defendant's vehicle began to fishtail in the rear and the vehicle spun around and crossed to the other side of the road into oncoming traffic. Because defendant was injured and unable to communicate with the paramedics, his clothing was removed to check for further injury.

During the removal of defendant's clothing, a paramedic found a plastic bag filled with a green, leafy substance, which subsequent chemical testing revealed to be marijuana.

While defendant was hospitalized for his injuries, a search warrant was obtained for defendant's blood test results from the hospital. Although the search warrant only sought the release of defendant's blood test results, the hospital released the results of a urine drug screen performed on defendant that showed the presence of marijuana-related THC. This urine test report was presented as evidence at trial.

Defendant was initially charged with one count of second-degree murder, MCL 750.317; MSA 28.549, three counts of felonious driving, MCL 752.191; MSA 28.661, one count of possession of marijuana, MCL 333.7403(2)(d); MSA 14.15(7403)(2)(d), and one count of operating a vehicle while his license was suspended, MCL 257.904(1)(b); MSA 9.2604(1)(b). Defendant was convicted of involuntary manslaughter, MCL 750.321; MSA 28.553, three counts of felonious driving, MCL 752.191; MSA 28.661, possession of marijuana, MCL 333.7403(2)(d); MSA 14.15(7403)(2)(d), and operating a vehicle while his license was suspended, MCL 257.904(1)(b); MSA 9.2604(1)(b). He was sentenced to concurrent sentences of seven to fifteen years' imprisonment for the manslaughter conviction, sixteen to twenty-four months' imprisonment for the felonious driving conviction, one year for the possession of marijuana conviction, and ninety days for the conviction of driving while his license was suspended. Defendant now appeals as of right. We affirm.

II

Defendant argues that the trial court erred in denying his motion to suppress the urine test evidence showing the presence of marijuana-related THC. He contends that the urine test results were outside the scope of the search warrant issued in this case and that those results were not admissible under MCL 257.625a(6); MSA 9.2325(1)(6). The trial court's ruling regarding defendant's motion to suppress involved questions of law that we review de novo. *People v Goforth*, 222 Mich App 306, 310 & n 4; 564 NW2d 526 (1997).

We first consider defendant's argument that the trial court improperly determined that the urine test results were admissible under MCL 257.625a(6); MSA 9.2325(1)(6). In pertinent part, this statute provides:

(6) The following provisions apply with respect to chemical tests and analysis of a person's blood, urine, or breath, other than preliminary chemical breath analysis:

(a) The amount of alcohol or presence of a controlled substance or both in a driver's blood or urine or the amount of alcohol in a person's breath at the time alleged as shown by chemical analysis of the person's blood, urine, or breath is admissible into evidence in any civil or criminal proceeding.

\*        \*        \*

(e) If, after an accident, the driver of a vehicle involved in the accident is transported to a medical facility and a sample of the driver's blood is withdrawn at that time for medical treatment, the results of a chemical analysis of that sample are admissible in any civil or criminal proceeding to show the amount of alcohol or presence of a controlled substance or both in the person's blood at the time alleged, regardless of whether the person had been offered or had refused a chemical test. The medical facility or person per-

forming the chemical analysis shall disclose the results of the analysis to a prosecuting attorney who requests the results for use in a criminal prosecution as provided in this subdivision. A medical facility or person disclosing information in compliance with this subsection is not civilly or criminally liable for making the disclosure. [MCL 257.625a(6)(a) and (e); MSA 9.2325(1)(6)(a) and (e).]

One of the primary rules of statutory construction is that, if its language is clear, a statute is to be enforced as written. *People v Denio*, 454 Mich 691, 699; 564 NW2d 13 (1997). Under the clear language of the two subsections at issue here, subsection 6(a) allowed the results of defendant's urine test to be admitted into evidence because they showed "the . . . presence of a controlled substance . . . in a driver's . . . urine . . . as shown by chemical analysis . . . ." Equally clearly, the provisions of subsection 6(e) are not applicable here because that subsection only references blood samples and their chemical analysis, without any mention of urine samples or urinalysis.[2]

Defendant argues that we should conclude that subsection 6(e), which is more specific, should be read as creating an exception to subsection 6(a), which is more general. However, the rule of statutory construction that defendant relies on in this regard applies only if "a conflict or inconsistency exist[s] between the statutes . . . ." *Szyszkoski v Lansing*, 64 Mich App 94, 97; 235 NW2d 72 (1975). "This aid to construction is inapplicable where . . . there is no conflict between the statutes." *Woll v Attorney Gen-*

---

[2] Although the trial court reached a different conclusion below, we will not reverse the trial court's decision where it reached the right result for a wrong reason. *Hawkins v Dep't of Corrections*, 219 Mich App 523, 528; 557 NW2d 138 (1996).

*eral*, 409 Mich 500, 516; 297 NW2d 578 (1980). "[T]he particular intention shall be considered as an exception to the general one" only "[w]hen a general intention is expressed and also a particular intention which is incompatible with the general one . . . ." *State Hwy Comm'r v Detroit City Controller*, 331 Mich 337, 363; 49 NW2d 318 (1951).

We find no incompatibility between subsections 6(a) and 6(e). As noted earlier, subsection 6(a) clearly allows into evidence chemical analyses that show the amount of alcohol or presence of a controlled substance in a driver's urine. Subsection 6(e) says nothing whatsoever regarding urine tests and, accordingly, cannot be read as disallowing the admission into evidence of urine tests or otherwise contradicting or presenting a conflict with subsection 6(a).[3] Defendant's argument would, in effect, read subsection 6(a) out of existence. In the absence of any conflict or contradiction between that subsection and another statute, we have no authority to do so.

Defendant also claims that, because the search warrant issued in this case was limited to only blood test results, the results of his urine test should have been suppressed. However, we have concluded above that the urine test results were admissible under MCL 257.625a(6)(a); MSA 9.2325(1)(6)(a). In *People v Perlos*, 436 Mich 305; 462 NW2d 310 (1990), our Supreme Court reviewed a number of cases in which hospitals had turned over test results under this statute even though no search warrants whatsoever had been issued. The Court questioned "whether the

---

[3] Because the issue is not before us, our decision should not be considered as expressing any opinion regarding whether there is a conflict or contradiction between the two subsections with respect to blood samples.

state's request and acquisition of blood test results without a search warrant infringed on defendants' Fourth Amendment privacy interests," noting that "[i]f no privacy interests existed, defendants do not have standing to challenge the government action." *Id.* at 316-317. The Court determined that the defendants had no reasonable "expectation of privacy" with respect to the test results turned over by the hospitals. While recognizing that "[g]enerally, information relating to medical treatment falls under the physician-patient privilege, and remains confidential," the Court reasoned that an expectation of privacy regarding blood alcohol test results, following an automobile accident and obtained for purposes of medical treatment, is not reasonable. *Id.* at 325.

> [W]e agree with the rationale underlying *United States v Miller* [425 US 435; 96 S Ct 1619; 48 L Ed 2d 71 (1976)]suggesting that there is no objectively reasonable expectation of privacy in the test results. Clearly, defendants cannot claim ownership or possession of the results. Also, as stated in *Miller*, information revealed to a third party, even for a limited purpose, can properly be conveyed to the government even if the information was revealed in confidence. In these cases, blood was taken for a limited purpose, medical treatment. As in *Miller*, [in these cases], the information conveyed was not privileged. Under the *Miller* analysis, once the hospitals obtained the results for medical purposes, it would have been unreasonable for defendants to assume that the results would necessarily remain private. At the very least, various hospital employees become aware of the test results in the normal course of their work. Society places a risk on persons in their dealings with third parties that information conveyed to third parties will not remain private. [*Id.* at 329.]

Applying this same rationale here, we conclude that defendant had no reasonable expectation of privacy

with respect to the urine test results and that he thus has no standing to challenge the government action in securing those results from the hospital.

III

Defendant asserts that, because no evidence existed that defendant used marijuana on the day of the accident, the trial court abused its discretion in admitting evidence that marijuana was found in defendant's jacket and that THC was detected in his urine. Defendant claims that this evidence was highly prejudicial and of little probative value. We disagree. Because defendant failed to raise this assertion below, this issue is unpreserved. *People v Grant*, 445 Mich 535, 546; 520 NW2d 123 (1994). In any event, we are not persuaded that the trial court abused its discretion in admitting the evidence. *People v Lugo*, 214 Mich App 699, 709; 542 NW2d 921 (1995).

Here, the evidence that marijuana was found in defendant's pocket was relevant in establishing the elements of possession of marijuana, one of the offenses with which defendant was charged. MRE 401, 402; *People v Brooks*, 453 Mich 511, 517; 557 NW2d 106 (1996). Further, the results of defendant's urine test, showing the presence of marijuana-related THC, served as additional evidence to prove that the marijuana belonged to defendant and to rebut any suggestion that it was placed in his jacket by someone else during the time he was unconscious or incoherent after the accident. Although defendant argues that no evidence was presented that marijuana played a role in causing the accident, the evidence in question was admitted on another basis unrelated to the cause of the accident. The evidence was probative of

the issue whether defendant was in possession of marijuana. The evidence did not invoke extraneous considerations into the matter and was not unfairly prejudicial to defendant.[4] *People v Pickens*, 446 Mich 298, 336-337; 521 NW2d 797 (1994), quoting *People v Goree*, 132 Mich App 693, 702-703; 349 NW2d 220 (1984).

IV

Defendant argues that he was denied a fair trial because of prosecutorial misconduct. Specifically, defendant claims that during the opening statement, the prosecutor appealed to the jury's sympathy by arguing that the decedent's wife had lost both a husband and a friend. Defendant further asserts that during closing argument, the prosecutor attempted to emblazon in the minds of the jurors the decedent's memory by making comments and displaying a photograph of the decedent.

Because defendant failed to object to the alleged instances of prosecutorial conduct, we will only

---

[4] Although this issue is not raised on appeal, the lower court record is somewhat unclear regarding whether defendant pleaded guilty of possession of marijuana or was found guilty by a jury. The judgment of sentence states that defendant was convicted by a jury and the parties also state this in their appellate briefs. However, other documents in the lower court record suggest that defendant pleaded guilty of possession of marijuana before trial commenced. Notwithstanding this discrepancy, we rely on the judgment of sentence, which is the official order of the trial court. *People v Vincent*, 455 Mich 110, 123; 565 NW2d 629 (1997), quoting *Tiedman v Tiedman*, 400 Mich 571, 576; 255 NW2d 632 (1977) (" 'courts speak through their judgments and decrees . . .' "). To the extent that defendant may have pleaded guilty of possession of marijuana, we conclude that any error committed by the trial court in admitting the evidence of the marijuana was not decisive of the outcome of the case in light of the overwhelming evidence, unrelated to marijuana, against defendant. *Grant*, *supra* at 553.

review this issue if a curative instruction could not have remedied the prejudicial effect of the prosecutor's comments or if the failure to consider the issue would result in a miscarriage of justice. *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994). A miscarriage of justice will not be found if the prejudicial effect of the prosecutor's comments could have been cured by a timely instruction. *People v Rivera*, 216 Mich App 648, 651-652; 550 NW2d 593 (1996).

The prosecutor's comments, in the context of the complete opening and closing arguments, were not blatant appeals to the jury's sympathy and were not so inflammatory that defendant was prejudiced. *People v Hoffman*, 205 Mich App 1, 21; 518 NW2d 817 (1994); *People v Modelski*, 164 Mich App 337, 347; 416 NW2d 708 (1987). The opening remarks were proper comments regarding the evidence the prosecutor intended to present. The display of the decedent's picture and accompanying comments during closing argument were only a brief part of the prosecutor's argument. See *People v Hedelsky*, 162 Mich App 382, 385-386; 412 NW2d 746 (1987). We conclude that any possible prejudice could have been cured by an instruction had defendant objected and that our failure to further review the issue will not result in a miscarriage of justice.[5]

V

Defendant claims that the trial court improperly failed to grant defendant's motion to quash and his later motion for a directed verdict. Specifically,

---

[5] Further, we note that the trial court properly instructed the jury that the attorneys' statements and arguments were not evidence.

defendant asserts that he was improperly bound over for trial with regard to the charge of second-degree murder and that it was error to allow the jury to deliberate regarding that charge because insufficient evidence of malice existed to support the charge.[6] We disagree.

With respect to defendant's argument regarding the bindover and the motion to quash, "[a] magistrate's ruling that alleged conduct falls within the scope of a criminal statute is a question of law reviewed for error, and a decision to bind over a defendant is reviewed for abuse of discretion." *People v Orzame*, 224 Mich App 551, 557; 570 NW2d 118 (1997). In reviewing the district court's decision to bind over a defendant, a circuit court may reverse only if it appears on the record that the district court abused its discretion. *Id.* "An abuse of discretion is found only where an unprejudiced person, considering the facts upon which the court acted, would say there was no justification or excuse for the ruling." *Id.* "Similarly, this Court reviews the circuit court's decision de novo to determine whether the district court abused its discretion." *Id.* With respect to defendant's motion for a directed verdict, we review the record de novo and consider the evidence presented by the prosecution in the light most favorable to the prosecution to determine whether a rational trier of fact could find that the essential elements of the crime charged were proved beyond a reasonable doubt.

---

[6] In making the assertion that insufficient evidence existed to support the element of malice, defendant primarily relies on this Court's decisions in *People v Goecke*, 215 Mich App 623; 547 NW2d 338 (1996), and *People v Baker*, 216 Mich App 687; 551 NW2d 195 (1996). These cases were recently reversed by our Supreme Court in *People v Goecke*, 457 Mich 442; 579 NW2d 868 (1998).

*People v Hammons*, 210 Mich App 554, 556; 534 NW2d 183 (1995).

The offense of second-degree murder consists of the following elements: "(1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v Goecke*, 457 Mich 442, 463-464; 579 NW2d 868 (1998). Defendant claims that there was insufficient evidence regarding the element of malice. The element of malice is defined as "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id.* at 464. Malice for second-degree murder can be inferred from evidence that the defendant "intentionally set in motion a force likely to cause death or great bodily harm." *People v Djordjevic*, 230 Mich App 459, 462; 584 NW2d 610 (1998). The offense of second-degree murder does not require an actual intent to harm or kill, but only the intent to do an act that is in obvious disregard of life-endangering consequences. *Goecke, supra* at 466.

In this case, there was evidence that defendant intentionally committed an act that was in disregard of life-endangering consequences and that was in "wanton and wilful disregard of the likelihood that the natural tendency of such behavior [was] to cause death or great bodily harm." *Id.* at 464. During the preliminary examination and the trial, the prosecutor established that although defendant had been warned about the dangers of the loose sway bar just hours before the accident, he drove at excessive speeds while weaving through traffic and cutting off other drivers. Evidence was also presented that the acci-

dent occurred when defendant's vehicle fishtailed as he turned too sharply to get into another lane. Because there was evidence to infer the element of malice, the question was one for the jury. *People v Reigle*, 223 Mich App 34, 37; 566 NW2d 21 (1997). Defendant was properly bound over for trial with regard to the second-degree murder charge, and his motion to quash was properly denied. *Orzame, supra.* Further, the trial court properly denied defendant's motion for a directed verdict because the evidence, viewed in a light most favorable to the prosecution, was sufficient to the extent that a rational trier of fact could find that the essential elements, including malice, of the second-degree murder charge were proved beyond a reasonable doubt. *Hammons, supra.*

VI

Defendant asserts that the trial court erred in denying his motion to disqualify the Oakland County Prosecutor's Office in this case. Defendant claims that the entire Oakland County Prosecutor's Office should have been disqualified from prosecuting the case because the victim who died in the accident, James Case, was the brother of David Case, the chief of the Family Support Division of the prosecutor's office. We disagree. "The determination of the existence of a conflict of interest sufficient to warrant disqualification of the prosecuting attorney is a question of fact to be reviewed for clear error." *Macomb Co Prosecutor v Murphy*, 233 Mich App 372, 384; 592 NW2d 745 (1999).

The disqualification of a prosecutor because of a conflict of interest can occur in situations where the

prosecutor has a personal, financial, or emotional interest in the litigation or a personal relationship with the accused. *People v Herrick*, 216 Mich App 594, 599; 550 NW2d 541 (1996); *People v Doyle*, 159 Mich App 632, 641-642; 406 NW2d 893 (1987), mod on other grounds (On Rehearing) 161 Mich App 743; 411 NW2d 730 (1987). After a determination has been made that a conflict of interest exists with regard to a prosecutor, the question then arises whether the entire prosecutor's office must be disqualified. *Doyle*, *supra* at 644. "If the . . . prosecuting attorney concerned in the conflict of interest has supervisory authority over other attorneys in the office, or has policy-making authority, then recusal of the entire office is likely to be necessary." *Id.* at 645; see, also, *In re Osborne*, 459 Mich 360, 369; 589 NW2d 763 (1999).

In the present case, David Case's role in the prosecutor's office had nothing to do with the prosecution of defendant. No evidence existed that David Case was involved in any manner with the attorneys who prosecuted this matter. Although Case has supervisory authority and policy-making authority over attorneys in the Family Support Division of the Oakland County Prosecutor's Office, there was no evidence that Case had any supervisory or policy-making authority over the attorneys who were prosecuting defendant. Thus, the trial court did not clearly err in finding that, while a conflict of interest did exist in this matter with regard to Case, the conflict did not require disqualification of the entire Oakland County Prosecutor's Office. *Macomb Co Prosecutor, supra.*

With respect to defendant's assertion that the prosecutor overcharged him with second-degree murder

when, in a similar case, a defendant with a prior record was prosecuted with regard to lesser charges, we conclude that this argument is without merit. The charges against defendant, as well as those against the other defendant, were independently reviewed by the Attorney General's Office and found to be warranted by the circumstances of this case.

VII

Defendant's argument that the cumulative errors deprived him of a fair trial is without merit. Because no errors were found with regard to any of the above issues, a cumulative effect of errors is incapable of being found. *People v Maleski*, 220 Mich App 518, 525; 560 NW2d 71 (1996); *People v Anderson*, 166 Mich App 455, 473; 421 NW2d 200 (1988).

We affirm.