# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

THOMAS G. XENAKIS,

        Defendant-Appellant.

UNPUBLISHED
December 12, 2017

No. 333184
Oakland Circuit Court
LC No. 1985-066553-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

THOMAS G. XENAKIS,

        Defendant-Appellant.

No. 333185
Oakland Circuit Court
LC No. 1985-066310-FH

---

Before: JANSEN, P.J., and CAVANAGH and CAMERON, JJ.

PER CURIAM.

In 1987, defendant, Thomas G. Xenakis, pleaded guilty in two separate criminal cases before the Oakland Circuit Court. However, he absconded before sentencing in both matters. Upon his recent recapture, the trial court sentenced him in both cases. In Docket No. 333184, defendant appeals as of right his conviction of possession of more than 650 grams of cocaine under a prior version of MCL 333.7403(2)(a)(*i*) (the "cocaine case"). For this conviction, defendant was sentenced to life in prison. In Docket No. 333185, defendant appeals as of right his convictions of two counts of extortion, MCL 750.213, one count of assault with a dangerous weapon (felonious assault), MCL 750.82, and three counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b (the "extortion case"). In the extortion case, the trial court sentenced defendant to concurrent sentences of 10 to 20 years' imprisonment for each extortion count and two to four years' imprisonment for felonious assault, all to be

served consecutively to three concurrent two-year terms of imprisonment for defendant's felony-firearm convictions. We affirm, but remand for ministerial correction of the judgment of sentence in the cocaine case.[1]

## I. FACTS

Defendant's convictions arise out of a series of events that occurred in late 1984. Defendant and his wife, apparently believing that their babysitter had stolen money from them, threatened the babysitter and her sister at gunpoint. The babysitter's sister eventually paid defendant $1,000, and wrote defendant a post-dated check for an additional $3,000. After defendant let them go, the babysitter and her sister reported this incident to the police, and also informed the police that defendant had a large amount of narcotics in his home. Officers used this information to obtain a search warrant, and found approximately 983 grams of cocaine, over $100,000 in cash, a gun, and other drugs and drug paraphernalia in defendant's home.

Defendant was charged in two separate cases, the cocaine case and the extortion case. Defendant was released on bail in both cases. The available record shows that defendant, with the assistance of attorney Bruce T. Leitman, attempted to negotiate a plea agreement with the police in the cocaine case. Defendant promised to provide information regarding other drug dealers in Michigan in exchange for a reduced cocaine charge, which would have permitted him to avoid the mandatory sentence of life without the possibility of parole that was then in effect for a violation of MCL 333.7403(2)(a)(*i*). See *People v Bullock*, 440 Mich 15, 22; 485 NW2d 866 (1992). However, the prosecutor eventually refused to agree to reduce the cocaine charge, and the matter was set for trial, with trial to begin on September 2, 1987.

Approximately one week before trial was to commence, defendant obtained a new attorney, Michael S. Friedman, who promptly filed a motion to adjourn the trial. However, on August 28, 1987, the date the motion to adjourn was scheduled to be heard, defendant instead pleaded guilty as charged in the cocaine case before then-Oakland Circuit Court Judge Jessica A. Cooper. Then, on September 10, 1987, he pleaded guilty as charged in the extortion case before a different judge, then-Oakland Circuit Court Judge Gene Schnelz.

In the cocaine case, defendant was scheduled to be sentenced on September 29, 1987. However, he did not appear for sentencing. He also failed to appear for sentencing in the extortion case. As defendant states in his appellate brief:

> Defendant remained a fugitive until 2014 and lived under a false identity in Miami, Florida. His fake identity was detected when he renewed his passport. He was federally prosecuted for the passport fraud, served one year and was turned back to the State of Michigan which reactivated the dormant prosecution.

---

[1] This Court consolidated the appeals. *People v Xenakis*, unpublished order of the Court of Appeals, entered June 10, 2016 (Docket No. 333184).

After defendant returned to custody in Michigan, defendant filed two motions in the cocaine case through his new attorney, James L. Feinberg. In one motion, defendant asked that he be permitted to withdraw his plea in the cocaine case. Defendant argued that he had been coerced into pleading guilty by statements made by Cooper. According to defendant, Cooper stated at the August 28, 1987 hearing that if defendant pleaded guilty, he would remain free on bond for 30 days before sentencing, but if he did not plead guilty, his bond would be revoked. Due to the age of the case, there exist no transcripts of this hearing. Defendant relied on an offer of proof, signed by Feinberg, to support his claims. According to the offer of proof, Feinberg had spoken with Friedman, who told Feinberg that Cooper indeed made these statements. Feinberg also promised that defendant would testify to the same. Defendant asked that the trial court hold an evidentiary hearing to hear testimony from Feinberg, defendant, and Cooper, after which the court could determine whether defendant was, in fact, coerced into pleading guilty. Defendant also asked that the entire Oakland County Prosecutor's Office be prohibited from responding to the motion. In a second motion, defendant asked that the entire Oakland Circuit Court bench be recused from the matter.

The trial court denied all of defendant's motions and a subsequent motion for reconsideration before sentencing defendant on April 25, 2016. Defendant appealed his convictions and sentences as of right in both cases. While the matter has been pending in this Court, the prosecutor filed a motion to dismiss in the extortion case. The prosecutor argued that defendant had no right to appeal his convictions and sentences because he pleaded guilty to the crimes. In the alternative, the prosecutor argued that defendant's lengthy absence from the state warranted dismissal of the appeal.[2] This Court denied the motion without prejudice, explaining that the prosecutor could "again rais[e] her claims regarding jurisdiction and/or dismissal of this appeal in her appellee's brief." *People v Xenakis*, unpublished order of the Court of Appeals, entered September 16, 2016 (Docket No. 333185).

## II. JURISDICTION

We first address the prosecutor's contention that this Court lacks jurisdiction over the present appeals. According to the prosecutor, defendant's only avenue of challenging his guilty plea convictions is to seek leave of this Court to appeal. We disagree.

At the time defendant committed the crimes at issue, and also at the time he entered his pleas, defendants who were convicted via plea were entitled to appeal their convictions as of right. *People v Kaczmarek*, 464 Mich 478, 481; 628 NW2d 484 (2001); *People v Smith*, 402 Mich 72; 259 NW2d 558 (1977). "However, those rules changed when, on November 8, 1994, voters approved Proposal B." *Kaczmarek*, 464 Mich at 482. "The removal of the right to be heard on appeal for a person who had pleaded guilty took effect on December 27, 1994, the effective date of the implementing legislation." *Id.*, citing 1994 PA 374 and 1994 PA 375. "Specifically, the change 'applies to criminal prosecutions for crimes committed on or after [that

---

[2] For reasons unknown to us, the prosecutor did not file a similar motion in the cocaine case.

date].' The effective date is drawn from language that appears at the end of both 1994 PA 374 and 1994 PA 375." *Kaczmarek*, 464 Mich at 482. Our Supreme Court "also has stated that the modified procedures described in certain amendments to the court rules apply to crimes committed on or after December 27, 1994." *Id*., citing 444 Mich cxiv (1995). Plainly, under *Kaczmarek*, this Court has jurisdiction over the present appeal. *Kaczmarek* makes clear that the relevant date is the date the crime was committed. Defendant's crimes were committed well before December 27, 1994, and thus, he may claim an appeal as of right in this matter. *Kaczmarek*, 464 Mich at 481-482.

The prosecutor contends that subsequent amendments to the implementing statutes have altered this landscape. We disagree. After Proposal B was approved, 1994 PA 374 amended MCL 770.3 to provide that, in accordance with Proposal B, all appeals "from final orders and judgments based upon pleas of guilty or nolo contendere shall be by application for leave to appeal." MCL 770.3(1)(e), as enacted by 1994 PA 374. Concurrently, 1994 PA 375 amended MCL 600.308 to explain that this Court's jurisdiction in appeals from guilty and nolo contendere pleas was limited to matters where this Court granted leave to appeal. MCL 600.308(2)(d), as enacted by 1994 PA 375. Both 1994 PA 374 and 1994 375 include a "Section 3," which states, "This amendatory act applies to criminal prosecutions for crimes committed on or after its effective date." 1994 PA 374; 1994 PA 375.

The prosecutor explains that both MCL 770.3 and MCL 600.308 have been amended on several occasions since 1994, and that these amendments omitted the "Section 3" language relied on by *Kaczmarek*. Thus, according to the prosecutor, this "time limit has been eliminated and no longer applies." The prosecutor is correct that the statutes have been amended. MCL 770.3 was amended by 1998 PA 407, which took effect on January 1, 1999. It was again amended by 2000 PA 402, which took effect on January 1, 2001. Neither public act includes language akin to what was stated in Section 3 of 1994 PA 374. MCL 600.308 has been amended by 2012 PA 333, which took effect on January 1, 2013, and by 2013 PA 164, which took effect on November 12, 2013. Neither of these public acts includes language akin to Section 3 of 1994 PA 375.

However, *Kaczmarek* was decided on July 3, 2001—after the effective dates of both 1998 PA 407 and 2000 PA 402. It would stand to reason that had our Supreme Court viewed the omission of the "Section 3" language as pivotal, it would have held to that effect in *Kaczmarek*. It did not. And in any case, as our Supreme Court explained in *Kaczmarek*, the Court "also has stated that the modified procedures described in certain amendments to the court rules apply to crimes committed on or after December 27, 1994." *Kaczmarek*, 464 Mich at 482, citing 444 Mich cxiv (1995). We are aware of no authority, and the prosecutor has provided none, undermining the legitimacy of this statement. Thus, our Supreme Court's view on the topic has seemingly not been altered by these later amendments to MCL 770.3 and MCL 600.308. See *People v Johnson*, 465 Mich 910; 635 NW2d 491 (2001) (citing *Kaczmarek* to explain that "[b]ecause this case arises from a criminal prosecution for a crime committed before December 27, 1994, defendant retains an appeal of right."). We leave it to our Supreme Court to overrule *Kaczmarek* if the Court deems that the appropriate course of action. Unless and until that occurs, this Court must agree with defendant, and hold that he has an appeal as of right.

### III. DOCKET NO. 333184 (THE COCAINE CASE)

### A. PLEA WITHDRAWAL

Next, we address defendant's primary argument on appeal: that the trial court abused its discretion by refusing to allow him to withdraw his plea in the cocaine case and denying his request for an evidentiary hearing. We conclude that the trial court did not abuse its discretion.

A trial court's decision on a motion to withdraw a plea is reviewed for an abuse of discretion. *People v Winters*, ___ Mich App ___, ___; ___ NW2d ___ (2017) (Docket No. 333009), slip op at 1. "A trial court abuses its discretion when its decision 'results in an outcome falling outside the principled range of outcomes.' " *Id*., quoting *People v Carnicom*, 272 Mich App 614, 617; 727 NW2d 399 (2006). A trial court's denial of a request for an evidentiary hearing regarding the voluntariness of a plea is likewise reviewed for an abuse of discretion. *People v White*, 307 Mich App 425, 429; 862 NW2d 1 (2014). To the extent this Court is asked to review the trial court's interpretation and application of court rules, this Court's review is de novo. *People v Dixon-Bey*, ___ Mich App ___, ___; ___ NW2d ___ (2017) (Docket No. 331499), slip op at 2.

The parties raise a number of arguments on appeal concerning a variety of aspects of this issue. However, and as the trial court correctly recognized, the matter is easily resolved on a single ground: that defendant cannot establish the factual underpinnings of his claim of coercion.

Ultimately, defendant bears the burden of establishing the facts underlying his claim of coercion. *People v Patmore*, 264 Mich App 139, 149; 693 NW2d 385 (2004); *People v Serr*, 73 Mich App 19, 25-26; 250 NW2d 535 (1976). Defendant's motion was initially supported solely by Friedman's offer of proof. After the prosecutor challenged whether this offer of proof was sufficient, given that it clearly amounts to bald hearsay,[3] Feinberg obtained an affidavit from Friedman. In this affidavit, Friedman states that Cooper did make the alleged statements that defendant now claims amount to coercion. The prosecutor, however, argued that under *Serr*, 73 Mich App 19, defendant and Friedman could not now claim coercion because, at the time the plea was entered, both defendant and Friedman signed a form in which they agreed that defendant's plea was not the result of coercion or threats. The trial court agreed, relying on *Serr* to deny the motion to withdraw.

We conclude that the trial court was correct to apply *Serr* to preclude defendant from withdrawing his plea in this matter. In *Serr*, the defendant pleaded guilty to a crime as part of a plea agreement, for which the trial court sentenced him to serve two to five years' imprisonment. *Id*. at 21-22. At sentencing, the defendant sought to withdraw his plea, contending that the plea "was induced by his understanding of a plea bargain as disclosed by a certain statement during the plea taking process. He claim[ed] this limited the court to imposition of a maximum sentence of one year in jail." *Id*. at 22. At the plea proceeding, the prosecutor stated that, as part

---

[3] See MRE 801(c) (" 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").

of the plea agreement, he would recommend, and was recommending to the court, that the defendant receive a sentence of one year in jail. *Id*. The trial court informed the defendant that he faced up to five years' imprisonment. *Id*. The defendant said he understood. *Id*. The trial court, after confirming that the prosecutor had recommended a one-year sentence, asked the defendant if he understood this to be the entire bargain; the defendant answered that he did. *Id*. at 23. The trial court later asked the defendant if he understood that the prosecutor's recommendation was not binding on the court, and that the court made no promise regarding the ultimate sentence. *Id*. The defendant confirmed that he understood the trial court's statements. *Id*. The defendant agreed that, knowing this to be the case, he wished to plead guilty. *Id*.

In rejecting the defendant's contention that he should be able to withdraw his plea, this Court explained:

> The trial judge did not abuse his discretion when he refused to set aside the guilty plea. It was clear on the record that in exchange for the guilty plea the prosecutor would recommend no more than one year in jail and would dismiss two other charges. It was equally clear this agreement was carried out. The defendant was given an opportunity to change his mind after he was advised the recommendation was not binding on the judge. He chose to continue his guilty plea with full knowledge of what could happen.

> But there is a deeper issue involved here. Is there a limitation on the testimony which the defendant or his attorney can offer? . . .

> \* \* \*

> It is the opinion of this court that where a defendant has been found guilty by reason of his own statements as to all of the elements required to be inquired into by GCR 1963, 785.7, and his attorney has also confirmed the agreement and the defendant has been sentenced, neither he nor his attorney will be permitted thereafter to offer their own testimony to deny the truth of their statements made to induce the court to act. To do so would be to permit the use of its own processes to create what amounts to a fraud upon the court. This is based on public policy designed to protect the judicial process. [*Id*. at 24-25, 28.]

This Court has reaffirmed this principle of *Serr* in a fairly recent, published opinion. In *White*, 307 Mich App at 428, the defendant pleaded guilty pursuant to a *Cobbs*[4] agreement. As part of the agreement, the defendant was required to pay restitution before sentencing; if he did so, the trial court agreed to sentence him to a minimum sentence at the bottom of the applicable sentencing guidelines range. *Id*. The defendant, however, failed to meet his obligation. *Id*. As a result, the trial court refused to abide by the sentence agreement, and imposed a higher sentence. *Id*. The trial court rejected the defendant's request to withdraw his plea, which was premised on

---

[4] *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993).

claims of ineffective assistance of counsel and that the plea was not voluntary. *Id*. The trial court also denied a request for an evidentiary hearing. *Id*.

To support his request for an evidentiary hearing, the defendant provided several affidavits, all stating that trial counsel "pressured defendant into entering a plea, that counsel was unprepared, and that counsel did not advise defendant of the charges against him or any possible defenses." *Id*. at 429. This Court explained:

> At the time of the plea, however, defendant was sworn and testified that he was satisfied with the advice given by his counsel. The court also specifically explained the charges and the possible sentences. Defendant stated that it was his own choice to plead guilty and that there were no promises, threats, or inducements compelling him to tender the plea. . . . The statements made in defendant's affidavit directly contradict his testimony at the plea hearing. The trial court denied defendant's request for an evidentiary hearing because it found that, under the circumstances, granting an evidentiary hearing at which defendant presumably would provide testimony inconsistent with his prior testimony would be against public policy. The trial court noted: "After all, the Defendant swore under oath to this Court to a certain state of affairs, and to now allow him to attack his own sworn testimony would allow him to benefit from perjury (either at the plea or in his affidavit) as well as to countenance a fraud upon the Court." [*Id*. at 429-430.]

This Court affirmed, relying on *Serr* to hold "that because defendant's offer of proof, i.e., his own affidavit, is inconsistent with defendant's own testimony during the plea hearing, the trial court did not abuse its discretion when it denied defendant's request for an evidentiary hearing." *Id*. at 431.

In the present matter, transcripts of the plea proceeding are not available due to the length of time that has transpired between the plea proceeding and defendant's motion to withdraw his plea. However, the paper record does contain a plea form, signed by defendant and Friedman on August 28, 1987, the date defendant entered his plea. In this document, defendant answers "yes" to the following questions:

> 3. Can you read, write, and understand the English language?
>
> 4. Do you understand that you are pleading guilty to possession of in excess of 650 [grams] of cocaine?
>
> 5. Is this plea the result of plea bargaining between yourself and your attorney, and the Assistant Prosecuting Attorney?
>
> * * *
>
> 16. Are you stating that the plea you are making is freely, understandingly and voluntarily made, and there has been no undue influence, compulsion or duress used against you to force you to plead guilty?

17. Are you stating to this Court that no promises have been made, other than those resulting from the plea bargaining process which are stated on the record, to induce this plea?

In addition, defendant answered, "No," to the question, "Has anyone threatened you?" He answered, "Yes," to the question, "Is it your own choice to plead guilty?" Above the signatures of defendant and Friedman is the statement, "I represent to the Court that all of the foregoing questions have been read and explained to me by my lawyer, and that my answers are truthful."

Thus, at the time of the plea, defendant and Friedman represented to the trial court that defendant's plea was not the result of coercion or threats by anyone. Having made these representations to the court in the past, Friedman and defendant are both now precluded from presenting contrary evidence in support of a motion to withdraw the plea. *White*, 307 Mich App at 428-430; *Serr*, 73 Mich App at 28. The only evidence presented by defendant to support his claim of coercion consists of his own promised testimony and Friedman's testimony. Because this testimony cannot be relied upon to support the motion, defendant ultimately has no evidence to support his request to withdraw his plea.

Defendant contends that he is entitled to an evidentiary hearing, at which defendant and Friedman would be able to offer their testimony that defendant was coerced into taking his plea. According to defendant, *Serr* holds that it is proper to conduct an evidentiary hearing in circumstances such as this. Defendant misreads *Serr*. *Serr* did explain that under some circumstances, an evidentiary hearing is an appropriate mechanism for resolving disputed factual issues pertaining to whether a defendant should be permitted to withdraw his or her plea. *Serr*, 73 Mich App at 25 ("Upon a motion to set aside a plea, accompanied by a proper affidavit, an evidentiary hearing must be held where the critical facts are in dispute."). *Serr*, however, continued after stating this general premise, explaining the rule discussed above—that those who represent one set of facts to the trial court at the time a plea is entered may not later contradict their statements. *Id*. at 28. Thus, in *Serr*, because "the testimony (or affidavit) of the defendant's attorney contradicting or denying his earlier statements at [the] time of plea is barred from receipt in evidence, there was no abuse of discretion on the part of the judge in refusing to set aside the plea." *Id*. at 31. Likewise, in this matter, an evidentiary hearing is not required because the trial court is barred from receiving defendant's proffered evidence.

We note that both the prosecutor and defendant fail to note or discuss the following statement in *Serr*:

This decision is limited to evidentiary testimony of the defendant or his attorney contradicting or denying statements previously made by the defendant or his attorney during a plea process in open court fully complying with GCR 1963, 785.7 where the judge has announced that he is convinced that the plea is understandingly and voluntarily made and is accurate and where, as a result of the acceptance of the plea, the defendant has been sentenced. [*Id*. at 30-31.]

This Court lacks transcripts of the plea proceeding, and thus, lacks a record demonstrating that defendant and his attorney made the statements during a plea process that fully complied with applicable court rules, and where "the judge has announced that [s]he is

convinced that the plea is understandingly and voluntarily made . . . ." *Id*. However, in cases where records have become unavailable due to the time that has passed while a defendant has fled the state, this Court has recognized the presumption of regularity. *People v Iacopelli*, 141 Mich App 566, 568-569; 367 NW2d 837 (1985). Under this concept, absent contrary evidence, doubts regarding the proper performance of official duties by judges are resolved in favor of the prosecution; it is presumed that the judge properly discharged his or her duties. *Id*.

It is important to understand precisely what duties are at issue here. We do not apply the presumption of regularity to the question whether Cooper made the statements defendant asserts she made to induce him into entering into the plea. Rather, we apply the presumption to a different question: whether Cooper conducted a proper plea proceeding complying with then-required court rules, during which she announced her conclusion that the plea was understanding and voluntary. At the time of defendant's plea, plea proceedings were governed by MCR 6.101(F), as amended October 1, 1986, 425 Mich llxv (1986). This rule required the trial court to make specific inquiries of the prosecutor, the defendant, and of the defendant's attorney, all aimed at discerning whether the plea was understanding, voluntary, and accurate. MCR 6.101(F)(1)-(4), as amended October 1, 1986, 425 Mich llxv (1986). The trial court could "not accept the plea unless it [was] convinced that the plea [was] understanding, voluntary, and accurate." MCR 6.101(F)(5), as amended October 1, 1986, 425 Mich llxv (1986).

Defendant offers no proof that Cooper failed to engage in the colloquy required by the applicable court rule, or that she was not convinced that the plea was understanding, voluntary, and accurate. In other words, defendant has not overcome the presumption of regularity to the extent it would presume that, as required by *Serr*, the written statements made by defendant and his attorney were made "during a plea process in open court fully complying with" applicable court rules, and where "the judge has announced that [s]he is convinced that the plea is understandingly and voluntarily made . . . ." *Serr*, 73 Mich App at 30-31. Thus, *Serr* is applicable to this case. For the reasons discussed, *Serr* prohibits defendant and Friedman from testifying that, contrary to the representations both previously made to the trial court, defendant was coerced into entering a plea to the cocaine charge. Because there is no additional evidence of coercion, ultimately, defendant has no evidence of coercion to support his motion to withdraw his plea. The trial court correctly denied the motion, and its decision not to hold an evidentiary hearing was not an abuse of discretion.[5]

### B. DISQUALIFICATION OF THE PROSECUTOR'S OFFICE

Defendant argues that the trial court erred when it denied his motion to recuse the entire Oakland County Prosecutor's Office from participating in this matter. We disagree. "The determination of the existence of a conflict of interest sufficient to warrant disqualification of the prosecuting attorney is a question of fact to be reviewed for clear error." *People v Mayhew*, 236 Mich App 112, 126; 600 NW2d 370 (1999) (quotation marks and citation omitted). The only basis for defendant's request that the entire prosecutor's office be disqualified is premised on the

---

[5] Given our conclusion, we decline to address all other questions raised by the parties pertaining to whether defendant may withdraw his plea.

trial court holding an evidentiary hearing, at which Cooper would be called to testify. For the reasons discussed above, no such hearing is necessary. Accordingly, defendant fails to present a reason why the entire prosecutor's office should be disqualified from this case.

## C. RECUSAL OF THE OAKLAND CIRCUIT COURT BENCH

Defendant also contends that the trial court erred by denying his request that the entire Oakland Circuit Court bench be recused from hearing this matter. We disagree.[6] Much the same as his request to disqualify the prosecutor's office, the only basis for defendant's request that the entire Oakland Circuit Court bench be disqualified is premised on the trial court holding an evidentiary hearing. Because no such hearing is necessary, defendant fails to present a reason why the entire Oakland Circuit Court bench should be disqualified in this matter.

## D. CORRECTION OF JUDGMENT OF SENTENCE

Defendant's final argument requests that this Court remand the matter for ministerial correction of his judgment of sentence. If a judgment of sentence contains an error, it is appropriate to remand the matter for the ministerial task of correcting the error. *People v Katt*, 248 Mich App 282, 311-312; 639 NW2d 815 (2001). Defendant's judgment of sentence indeed contains an error. Defendant pleaded guilty to possession of cocaine in violation of MCL 333.7403(2)(a)(*i*). At the time of his plea, this statute prohibited the possession of more than 650 grams of cocaine. See MCL 333.7403, as enacted by 1978 PA 368. However, in its current form, this same subsection of the statute prohibits possession of 1,000 grams or more of cocaine. MCL 333.7403(2)(a)(*i*). The judgment of sentence accurately reflects a conviction for a violation of MCL 333.7403(2)(a)(*i*). However, it describes the offense as one of possession of 1,000 grams or more of cocaine. Because defendant pleaded guilty under the former version of the statute, we remand the matter for ministerial correction of the judgment of sentence to reflect a conviction of possession of more than 650 grams of cocaine.[7]

---

[6] While defendant did make such a request in the trial court, once the request was denied, he did not seek review before the chief judge of the Oakland Circuit Court. Accordingly, the issue is not preserved, MCR 2.003(D)(3)(a)(*i*); *Welch v Dist Court*, 215 Mich App 253, 258; 545 NW2d 15 (1996), and our review is for plain error affecting substantial rights, *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

[7] Because this issue was not raised below, it is unpreserved. *Carines*, 460 Mich at 763. Thus, to be entitled to relief, defendant must demonstrate plain error. *Id*. Defendant must show that (1) an error occurred, (2) the error was plain, meaning it was clear or obvious, and (3) the error affected substantial rights, meaning that the error affected the outcome of the lower court proceedings. *Id*. "Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is only warranted when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of the judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks, brackets, and citation omitted). We find that all of these elements are satisfied in this case.

## IV. DOCKET NO. 333185

We are somewhat puzzled by defendant's decision to claim an appeal from the judgment of sentence in the extortion case in Docket No. 333185. This is because defendant raises no claims of error arising out of the extortion case. As defendant fails to assert any errors related to the extortion case, in Docket No. 333185, we affirm defendant's convictions and sentences.

## V. CONCLUSION

In Docket No. 333184, we affirm defendant's conviction and sentence, but remand for ministerial correction of the judgment of sentence. In Docket No. 333185, we affirm defendant's convictions and sentences. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Thomas C. Cameron

-11-