*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MAURICE MARTEZ SUMLER,

        Defendant-Appellant.

UNPUBLISHED
December 14, 2023

No.  363924
Macomb Circuit Court
LC No.  2021-002707-FC

Before:  LETICA, P.J., and O'BRIEN and CAMERON, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for second-degree murder, MCL 750.317, reckless driving causing death, MCL 257.626(4), and failure to stop at the scene of an accident causing death, MCL 257.617(3).  We affirm.

## I.  BACKGROUND

This case arises out of the death of a five-year-old child, the victim.  The victim was crossing the road at the intersection of Van Dyke Road and Stephens Street in Warren, Michigan, when he was struck by defendant's vehicle and killed.  The crash occurred at approximately 9:42 p.m. on June 29, 2021, after defendant ran a red traffic light on his way to work.

At defendant's trial, Rachel Draper testified that on the night of the crash, she and her son, her niece, and her nephew, the victim, were waiting at a corner to cross Van Dyke.  She stated that she looked both ways and did not see any traffic near, so she and the children began crossing the street, despite the light still being green for traffic.  Draper's son and the victim were both on bicycles.  Draper testified that she saw headlights in the lane furthest away from her and estimated that they were about three blocks away.  Draper stated that she lived nearby, was familiar with the area and the intersection, and would not typically be concerned about crossing when a vehicle was that far away.  She stated that the speed limit in that area of Van Dyke Road is 35 miles per hour.  Draper saw the traffic light turn from green to yellow while she was crossing the road with the children.  When the traffic light turned red, Draper and the two boys were still in the road.

-1-

A surveillance video of the intersection was admitted into evidence and played for the jury during Draper's testimony. The video showed that at 9:42:13 p.m., the Van Dyke Road traffic light was red. At 9:42:14 p.m., a black sport utility vehicle (SUV) hit the victim. Draper testified that the victim "disappear[ed]" and that she found his bike and shoe in the road and started screaming.

Officer Pasternacki of the Warren Police Department was the evidence technician responsible for collecting, preserving, and packaging the evidence. He testified that the distance from the point of impact and the landing spot of the victim's body was 172.96 feet. Officer Pasternacki did not see any skid marks or other signs of braking.

Detective Nathan Callow of the Warren Police Department testified as an accident reconstruction expert. He stated that defendant was driving his vehicle between 56.10 and 58.82 miles per hour at the time of impact with the victim.

Detective Jeff Konwinski of the Warren Police Department was the officer in charge of this case. Detective Konwinski performed a search of defendant's vehicle and found a "burnt small marijuana cigarette or cigar" in the center console's ashtray. A laboratory test confirmed the substance was marijuana. Defendant's blood was tested, and 5 nanograms of THC were detected. Defendant's blood was also tested for alcohol, but there was none in his system. During Detective Konwinski's search of defendant's vehicle, he also found a notice of suspension from Chrysler, defendant's employer, to be served from May 25 to June 7 (no year provided). He testified that the victim's blood was found on defendant's bumper and on the hood of defendant's vehicle. Detective Konwinski also completed a digital download of defendant's phone and recovered messages sent and received after the incident. In the messages, defendant acknowledged that he was in a car accident earlier in the evening. There was no evidence of defendant calling 911 or the nonemergency phone number at any time. Detective Konwinski testified that defendant left his car in a Taco Bell parking lot and ran to work on foot where he clocked in. After talking to his supervisor, he left work and went back to his vehicle. Shortly thereafter, defendant was arrested and interviewed by detectives at the Warren police station.

Defendant did not testify at trial, but his recorded interview with the detectives was admitted into evidence and presented to the jury. Defendant admitted that he smoked marijuana at his home before leaving for work. Defendant also admitted that he saw children in the crosswalk as he approached the yellow traffic light and stated that he did not think that they should have been there. He recognized that they were halfway across the road and on bikes when the light was still yellow. Defendant said that he drove between two children, one on the left and one on the right, and that he side-swiped a child. In addition, defendant admitted that he did not touch his brakes at all during the incident, and that he kept driving after hitting the victim. Defendant stated that he could not call 911 because he had to contact his boss so he did not get in trouble at work. Defendant explained that he had a history of being late to work and was on corrective action where, if he was late again, he would lose his job. Upon his arrival at work, defendant said he told his supervisor that he hit a child and his supervisor advised him to call the police, but he was apprehended by police before he had the chance.

Defendant was convicted by the jury as stated. This appeal followed.

## II. ANALYSIS

On appeal, defendant argues that the prosecution presented insufficient evidence to support the jury's verdict as to the intent element of a second-degree murder conviction. Specifically, defendant argues that there was insufficient evidence to establish beyond a reasonable doubt that defendant knowingly created a very high risk of death or great bodily harm knowing that death or such harm would be the likely result of his actions. In other words, defendant's only argument on appeal is that malice was not established beyond a reasonable doubt. We disagree.

This Court reviews sufficiency-of-the-evidence claims de novo. *People v Anderson*, 331 Mich App 552, 557; 953 NW2d 451 (2020). This Court must review the evidence "in the light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crimes were proven beyond a reasonable doubt." *People v Harrison*, 283 Mich App 374, 377-378; 768 NW2d 98 (2009). "A trier of fact may consider circumstantial evidence and all reasonable inferences the evidence creates." *Anderson*, 331 Mich App at 558. When considering the sufficiency of evidence, "[t]he standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

"In order to convict a defendant of second-degree murder, the prosecution must prove: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v Roper*, 286 Mich App 77, 84; 777 NW2d 483 (2009) (quotation marks and citation omitted). "Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v Goecke*, 457 Mich 442, 464; 579 NW2d 868 (1998). Malice may be "inferred from evidence that the defendant 'intentionally set in motion a force likely to cause death or great bodily harm.' " *People v Mayhew*, 236 Mich App 112, 125; 600 NW2d 370 (1999), quoting *People v Djordjevic*, 230 Mich App 459, 462; 584 NW2d 610 (1998). Malice may also be proved by establishing that the defendant possessed the "intent to do an act that is in obvious disregard of life-endangering consequences." *Mayhew*, 236 Mich App at 125.

Defendant argues that his actions of driving approximately 25 miles per hour over the speed limit and running a red light do not equate with posing a high risk of death or great bodily harm. Defendant also contends that because the incident took place at 9:40 p.m. in an area where there was not substantial traffic on the road, it was reasonable to infer that pedestrian traffic would also be rare or nonexistent.

We conclude that there was sufficient evidence for the jury to find that the element of malice was proven beyond a reasonable doubt. Testimony from Detective Callow established that defendant was driving between 56 and 58 miles per hour in an area with a 35-miles-per-hour posted speed limit. Surveillance video showed that defendant drove through the intersection at Van Dyke Road and Stephens Street, despite the traffic light being red. The prosecution admits that if these were the only two facts presented, the element of malice would not likely be met. However, the evidence presented by the prosecution established more than just speeding and disregarding a red light.

-3-

The prosecution does not need to prove that defendant intended to kill or harm the victim. *Mayhew*, 236 Mich App at 125. Instead, the prosecution must prove only "the intent to do an act that is in obvious disregard of life-endangering consequences." *Id*. Here, the surveillance video and the testimony from Officer Pasternacki showed that defendant did not slow down, brake, or stop his vehicle at any point before, during, or after he drove his vehicle through the intersection. The surveillance video also showed that the convenience store located at the corner of the intersection was open and had a parking lot full of activity, thereby negating defendant's argument that it was reasonable to infer that there would not be pedestrian traffic in the area.

Additionally, in his interview with detectives, which as previously mentioned was played for the jury and submitted as evidence, defendant admitted that he saw multiple children in the crosswalk before he reached the intersection but still did not slow or stop his vehicle. Defendant also admitted that he knew he was speeding and that the traffic light was yellow and subsequently red. Instead of slowing down or stopping, defendant stated that he tried to drive between two of the children, but ultimately hit one and kept going because he "could not be late for work." Defendant further admitted that he did not stop his vehicle until he was over 6 miles away from the incident and his vehicle would no longer drive properly.

This collection of evidence, viewed in a light most favorable to the prosecution, was sufficient to establish the requisite malice. Defendant admitted to knowingly driving his car above the speed limit through a red traffic light while being aware that children were crossing the road in front of him. Defendant also admitted that he did not slow down or stop his vehicle, despite being aware that he collided with a child. It was reasonable for the jury to find that the failure to slow down or stop when approaching an intersection with pedestrians in the crosswalk was a willful act that disregards the likelihood that death or great bodily harm would come from a collision between an automobile and a child. Accordingly, there was sufficient evidence from which the jury could conclude that the element of malice in a charge of second-degree murder was proven beyond a reasonable doubt.

Affirmed.

/s/ Anica Letica
/s/ Colleen A. O'Brien
/s/ Thomas C. Cameron