*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

UNPUBLISHED
March 25, 2021

V

THOMAS ASHLEY CASSON,

      Defendant-Appellant.

No. 349090
Kalamazoo Circuit Court
LC No. 2018-001195-FC

Before: RONAYNE KRAUSE, P.J., and MARKEY and BORRELLO, JJ.

PER CURIAM.

Defendant was convicted by a jury of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a) and (2)(b) (sexual penetration of a person under 13 years of age by an individual 17 years of age or older). The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to life imprisonment for both convictions. Defendant appeals by right. We affirm.

## I. BASIC FACTS

There was evidence presented at trial that defendant sexually assaulted the then nine-year-old victim on multiple occasions. The victim's mother, AE, rented a house from defendant. Along with AE, the victim lived on the ground floor of the home with her sisters, MH and PH. Defendant frequently visited the home and spent time with AE and the victim. PH moved out of the house to live with a nearby friend of the family, Jessica Ruiz. PH moved out because the home environment was intolerable. AE failed to keep the home clean and feed her children. Additionally, AE used drugs in the home, and she frequently left the house to engage in drug use. The victim and PH believed that their mother never had money for their care because she spent any money she had on drugs. PH was also uncomfortable with defendant's presence in the home because he was a registered sex offender.

The victim testified that she heard AE on the phone offering to give someone to her landlord in exchange for not having to pay rent. According to the victim, at some point in time after overhearing her mother on the phone, defendant began penetrating the victim's vagina with his penis every other week. The first assault occurred when defendant offered to help the victim

look for her Nintendo DS in her bedroom. While in the victim's bedroom, defendant undressed and sexually penetrated her. The victim testified that there was a second incident that stood out in her mind because another man named "Josh" was present. The victim explained that defendant was penetrating her vagina with his penis when Josh walked in and took pictures. Defendant and Josh did not acknowledge each other. The victim testified that Josh left after taking the pictures. Although the victim testified that defendant sexually assaulted her every other week, the two counts of CSC-I pertained to the two specific instances discussed above.

After the victim and her sisters eventually moved in with their father, defendant evicted AE. Approximately five years later, the victim disclosed that defendant had sexually abused her. This disclosure came during an investigation involving a claim of sexual assault the victim made against another individual. Defendant was arrested and later convicted of two counts of CSC-I. He now appeals.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant alleges several instances of ineffective assistance of counsel. We conclude that none of defendant's arguments warrants reversal. Whether counsel was ineffective presents a mixed question of fact, which is reviewed for clear error, and constitutional law, which we review de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). The Michigan Supreme Court set forth the basic principles governing a claim of ineffective assistance of counsel in *People v Carbin,* 463 Mich 590, 599-600; 623 NW2d 884 (2001), observing as follows:

> To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy [a] two-part test . . . . First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the counsel guaranteed by the Sixth Amendment. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. Second, the defendant must show that the deficient performance prejudiced the defense. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. [Citations and quotation marks omitted.]

An attorney's performance is deficient if the representation falls below an objective standard of reasonableness. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000).

## A. FAILURE TO IMPEACH THE VICTIM

Defendant argues that trial counsel was ineffective for failing to impeach the victim with information that she provided to the police as found in a July 2018 police report. "Counsel may provide ineffective assistance if counsel unreasonably fails to develop the defendant's defenses by adequately impeaching the witnesses against the defendant." *People v Lane*, 308 Mich App 38,

68; 862 NW2d 446 (2014). We first note that defendant relies on a police report that is not part of the lower court record; therefore, the document is not properly before us. *People v Eccles*, 260 Mich App 379, 384 n 4; 677 NW2d 76 (2004), citing MCR 7.210(A)(1).

Moreover, even on substantive review, defendant's argument lacks merit. The police report referenced the victim's assertions that the sexual assaults occurred back in 2012 and 2013 when she lived with her mother on Hutchinson St., that a person named "Josh" was occasionally present when defendant had sexual intercourse with her, that Josh took pictures of the sexual assaults, and that Josh lived in a white house behind the victim's home. The police report then indicated that the reporting officer located records showing that AE lived on Hutchinson St. back in 2012 and that a Joshua T had lived nearby in a white house on Hutchinson St.

At trial, testimony was developed showing that there was a Joshua B who had lived close to the victim and that he was often at the victim's home and may have dated AE. Joshua B, who was called as a witness by defendant, denied ever witnessing or photographing defendant having sex with the victim. The victim was not completely sure whether it was Joshua B who was in the room taking pictures when she was being raped by defendant. Also, the victim's testimony reflected that the sexual assaults occurred in her home—a yellow house—on Jackson St. There was evidence presented at trial that the victim and her mother had lived for a very brief time on Hutchinson St. before moving into the yellow house on Jackson St. and that defendant was the landlord of the Jackson St. house.[1]

On appeal, defendant contends that Joshua T looked more like the man described by the victim than Joshua B, considering that Joshua T had bad teeth, which was one of the features the victim noted when describing the person who took the pictures.[2] Defendant maintains that had defense counsel familiarized himself with the police report, he could have used the information to impeach the victim with respect to the location of the home where the alleged sexual assaults occurred, Hutchinson St. versus Jackson St., and whether it was actually Joshua T and not Joshua B who was present and took pictures.

With regard to the address where the sexual assaults occurred, the evidence at trial made clear that it would have been the yellow house on Jackson St. where the victim was abused, and, indeed, she had made that claim. While defendant could have challenged the victim on cross-examination about telling the officer that the sexual acts took place at a home on Hutchinson St., the victim was recounting events from five years earlier when she was nine years old and had often moved. These were memory lapses that could be expected under those circumstances; however, the police report reflected that the victim had definitively accused defendant of sexual assault. She had never wavered, and reference to the police report would have reinforced the consistency of

---

[1] There was testimony showing that defendant moved out of the Jackson St. house around the time that the victim moved into the home. Defendant had to move because, as a registered sex offender, he lived too close to a school.

[2] Defendant attached Internet "mug shots," which are not part of the record. The mug shots contained personal information, including that Joshua T had teeth that were in "poor condition" and that Joshua B's teeth were in "good condition."

her accusation. Thus, we cannot conclude that counsel's performance was deficient or that defendant has demonstrated the requisite prejudice. With respect to the two Joshuas, we note the victim testified that she did not know for sure that it was Joshua B who was in the room taking pictures during the sexual assault. Additionally, we fail to see how questioning the victim about whether it was Joshua T instead of Joshua B taking pictures would have had any bearing on the jury's determination whether defendant sexually penetrated the victim. Again, the victim showed no confusion identifying defendant as her assailant. Furthermore, by introducing the possibility that Joshua T was the person present during the assault and taking photographs, defendant would have potentially undermined his reliance on Joshua B's testimony that he never witnessed defendant sexually abusing the victim. Accordingly, we cannot conclude that trial counsel's performance fell below an objective standard of reasonableness or that prejudice was incurred.

Defendant makes additional cursory arguments based on the police report and an additional police report, which is also not part of the record. Defendant claims that the victim informed the police that she secretly overheard, in person, a discussion by her mother and defendant about allowing access to someone in exchange for not having to pay rent, yet at trial the victim testified that it was a phone conversation that she overheard. In the police report, the victim stated that she recalled AE offering her to defendant as payment for rent; she did not express that she heard the conversation in person. Moreover, in the police report, the victim specifically identified defendant, while at trial the victim merely referred to the "landlord" relative to the discussion or conversation with AE. Given these circumstances, it would not have been beneficial for defense counsel to raise matters included in the police report; indeed, it probably would have been detrimental. Thus, there was no deficient performance. The other cursory argument defendant makes is that in one of the police reports the victim was reported to have told her mother that the perpetrator had red hair. But defendant does not have red hair. This is essentially the full argument. We have no context for this argument or any record support regarding defendant's hair color in 2012-2013. Accordingly, the argument is rejected.

## B. ALLEGED FALSE ALLEGATION OF SEXUAL ABUSE

Defendant next argues that he was denied the effective assistance of counsel because his attorney failed to impeach the victim with a prior false allegation of sexual assault. This issue pertains to an investigation regarding a claim of sexual assault the victim made in Calhoun County regarding another individual that led to the victim's disclosure with respect to defendant's conduct in this case. In the Calhoun County case, charges were dismissed because the prosecutor did not believe the victim.[3] Defendant has attached police report excerpts reflecting that res gestae witnesses involved in the Calhoun County case denied witnessing the accused doing anything improper to the victim. As before, the police report is not part of our lower court record.

_____

[3] The prosecutor in this case stated on the record that he had called the prosecutor in Calhoun County and was informed of the reason that the charges there were not being pursued. According to the prosecutor in the instant case, the Calhoun County prosecutor supposedly "had decided basically the credibility of the defendant," that "the juvenile defendant seemed to be telling the truth to her[,]" and that "there were some aspects of what the victim said that she thought it would be difficult to prove at trial, . . . and because it was difficult to prove, she dismissed the case."

When the issue arose in this case, the trial court told defense counsel that if he decided to question the victim about the allegations in the Calhoun County case, "we can go from there and then make a decision" on admissibility. On cross-examination, defense counsel did not question the victim about the case in Calhoun County.

Evidence that a complainant made a prior false accusation of sexual assault is admissible at trial. *People v Williams*, 191 Mich App 269, 272; 477 NW2d 877 (1991). "[F]alse accusations are relevant in subsequent prosecutions based upon the victim's accusations because the fact that the victim has made prior false accusations of rape directly bears on the victim's credibility and the credibility of the victim's accusations in the subsequent case . . . ." *Id.* In *Williams*, the panel held that the "defendant has been unable to offer any *concrete evidence* to establish that the victim had made a prior false accusation of being sexually abused . . . ." *Id.* at 273 (emphasis added).

We previously granted, in part, a motion to remand for "the trial court to consider . . . defendant's argument that he received ineffective assistance of trial counsel because trial counsel failed to impeach the victim with allegedly false prior allegations of sexual assault[.]" *People v Casson*, unpublished order of the Court of Appeals, entered December 7, 2020 (Docket No. 349090). The order further provided:

> Regarding the . . . argument, defendant shall be permitted to make an offer of proof that the victim made an allegation that was actually false. The trial court may hold an evidentiary hearing, on the record or in camera, as it deems necessary. The trial court shall make rulings whether it would find defendant's proffered evidence admissible, and whether it would have admitted such evidence during defendant's trial. [*Id.* (citations omitted).]

On remand, the trial court conducted an evidentiary hearing on January 13, 2021. Defendant again simply referenced the police report in the Calhoun County case. Appellate counsel for defendant informed the trial court that she did not have the time to obtain affidavits or statements from the accused and the other witnesses in the Calhoun County case; however, in defendant's supplemental brief on appeal there is no request for more time to gather affidavits and statements. Instead, defendant complains that, effectively, the only way to establish a false claim of sexual assault is through recantation and that such evidence is itself usually treated with suspicion. The trial court indicated on remand that the police report merely revealed a "he said, she said" situation and that no proof was submitted demonstrating that the victim actually made a false allegation of sexual assault. The trial court ruled:

> So, at this point, with regards to that issue and based on the record that I have in front of me, I wouldn't have allowed any additional evidence to come in with regards to . . . the allegation that there was . . . an allegedly false prior allegation of a sexual assault in Calhoun County which, I believe, would have occurred a couple of years after the allegations involved here . . . . So, that is my ruling at this time on the first issue that we were here to address. I just don't—based on the offer of proof and where we are at right now, I . . . don't have enough evidence to say yes that would have come in at the time of this trial.

We conclude that the trial court did not err in its ruling on remand. We disagree with defendant's contention that recantation is the only way to show a false allegation of sexual assault. Of course, a perjury conviction would also suffice. Regardless, we need not establish the quantum of proof necessary to constitute "concrete evidence" of a purported false allegation of sexual assault because, whatever the exact burden, it was clearly not met by sole reliance on the Calhoun County police report. Furthermore, the inconsistencies between the victim's story and the accounts given by the witnesses to the police in the Calhoun County case, which accounts were never tested in court, do not serve as concrete evidence that the victim's allegations were false. And the Calhoun County prosecutor's decision to dismiss the charges certainly does not equate to concrete evidence that the victim made false accusations of sexual assault. Because defendant fails to meet his burden of establishing the factual predicate for his claim, this argument fails. See *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011).

## C. OTHER-ACTS EVIDENCE

Defendant next argues that he was denied the effective assistance of counsel because trial counsel stipulated to the admission of other-acts evidence. We disagree.

Before trial, the prosecution filed notices of its intent to introduce other-acts evidence pursuant to MCL 768.27a. The prosecution sought to admit defendant's certified CSC-I conviction from 1997 when he was convicted of vaginally penetrating a 12-year-old girl, NW, with his penis. Additionally, the prosecution intended to present testimony that defendant acted like he was the boyfriend of a girl, DR, who was 13 or 14 years old, that defendant and DR had sex, and that DR tried to have defendant's baby. The prosecution claimed that evidence of the incidents involving NW and DR was admissible pursuant to MCL 768.27a. The prosecution contended that the other-acts evidence was important because there was no DNA evidence in this case. Defense counsel stipulated to the admission of the other-acts evidence.

On the first day of the jury trial, DR testified that when she was 13 years old she started a sexual relationship with defendant. DR explained that one day she went fishing with defendant and that as they were walking out of the woods, defendant asked her to show him her breasts. She did so, and he grabbed them. Defendant also touched DR's vagina. DR further claimed that when she was 14 years old defendant digitally penetrated her vagina in the basement of his home. She additionally performed fellatio on him many times. Defendant also penetrated her vagina with his penis on multiple occasions. He did so in the home that he shared with his wife and also in the house where he sexually assaulted the victim in the instant case. DR testified that she never told anyone about the abuse because she was scared and was concerned about what other people would think. DR further testified that defendant continued to sexually abuse her until he was jailed. Later, when he was in jail, they spoke on the phone. During a phone conversation, defendant asked DR to have his baby because his wife could not have children. DR testified that she finally disclosed that defendant sexually abused her after a detective started showing up at her home asking questions.

On the second day of trial, the court admitted into the record a redacted certified conviction, showing that defendant was convicted of CSC-I for sexually assaulting NW. She testified that the day before her 13th birthday party, when she was still 12 years old, defendant came over to her house. NW knew defendant because he "hung out in the same complex." He was not her mother's

friend; he was her friend. Defendant would come over to her house all the time. The night before her birthday party, NW was at home watching her four-year-old sibling when defendant arrived. NW's parents were not home, and NW had sex with defendant that night. Specifically, defendant put his penis into her vagina. NW testified that she also had sex with defendant after she turned 13 years old.

MCL 768.27a(1) provides that "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." In *People v Watkins*, 491 Mich 450, 455-456; 818 NW2d 296 (2012), our Supreme Court construed MCL 768.27a:

> We hold that MCL 768.27a irreconcilably conflicts with MRE 404(b), which bars the admission of other-acts evidence for the purpose of showing a defendant's propensity to commit similar acts, and that the statute prevails over the court rule because it does not impermissibly infringe on this Court's authority regarding rules of practice and procedure under Const 1963, art 6, § 5. We also hold that evidence admissible under MCL 768.27a remains subject to MRE 403, which provides that a court may exclude relevant evidence if the danger of unfair prejudice, among other considerations, outweighs the evidence's probative value. In applying the balancing test in MRE 403 to evidence admissible under MCL 768.27a, however, courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect.

MCL 768.27a permits the admission of "evidence that previously would have been inadmissible, because it allows what may have been categorized as propensity evidence to be admitted in this limited context." *People v Pattison*, 276 Mich App 613, 619; 741 NW2d 558 (2007). The *Watkins* Court warned, however, that even though other-acts evidence can be admitted under the statute to show propensity, this does not mean that other-acts evidence can never be excluded under MRE 403 as overly prejudicial:

> There are several considerations that may lead a court to exclude such evidence. These considerations include (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. This list of considerations is meant to be illustrative rather than exhaustive. [*Watkins*, 491 at 487-488.]

In this case, there is no dispute that defendant was charged with a listed offense involving a minor, CSC-I, and that he committed listed offenses against NW and DR when they were minors, CSC-I. MCL 768.27a(2)(a); MCL 28.722(j) and (w)(*iv*). Defendant focuses on the six considerations listed in *Watkins* that can support the exclusion of other-acts evidence under MRE 403. He first argues that the other acts were dissimilar to the charged crime. Defendant asserts

that there is a distinction between 13-year-old girls, like NW[4] and DR, and nine-year-old girls, like the victim. Defendant claims that his conduct with NW and DR was consensual and that sex with a 13-year-old "young lady capable of a higher-level emotional maturity is drastically different than the alleged rape of a nine-year old child." We find this argument both meritless and repugnant. Under Michigan law, a 13-year-old child cannot consent to sex. See MCL 750.520d(1)(a) (CSC-III) (sexual penetration involving a person 13-to-15 years of age); MCL 750.520e(1)(a) (CSC-IV) (sexual contact involving a person 13-to-15 years of age). For purposes of other-acts analysis under MCL 768.27a, there is no discernible difference between the rape of a nine-year-old child and the rape of a 13-year-old child.

Defendant next claims a lack of temporal proximity between the charged offenses and the sexual assault of NW 22 years earlier in 1997. First, defendant sexually assaulted the victim in 2012-2013; consequently, there was no 22-year disparity. Furthermore, defendant was not released from prison until 2005 for the CSC-I conviction involving NW, so he did not have the opportunity to prey on any new victims for eight of those years. Thus, defendant's temporal proximity argument evaporates and is not persuasive. Additionally, the sexual assaults of the victim and DR were close in time.

Appellate counsel also maintains:

> Mr. Casson did not have any other convictions since 1997. He entered into a consensual relationship with a thirteen-year-old in 2014. At the age of 17, he wanted the relationship to move forward with children.

This argument lacks merit. The lack of convictions since 1997 clearly did not reflect that defendant was not engaging in sexual acts with underaged girls. And as previously noted, a 13-year-old child cannot consent to sex. Also, predator-victim dynamics do not constitute a "relationship" as that term is ordinarily used and understood.

Defendant next concedes that the evidence supporting the occurrence of the other acts was reliable. Defendant then addresses the issue whether there was a "need for evidence beyond the complainant's and the defendant's testimony." *Watkins*, 491 Mich at 487-488. But defendant then frames his argument by stating that "[t]he prosecution certainly needed the suggestion of other similar acts" because "[w]ithout this lurid information fed to the jury," the prosecutor would have had to solely rely on the victim's testimony, which was riddled with contradictions and inconsistencies. This argument tends to support, not undermine, the admission of the other-acts evidence to show defendant's propensity to have sex with young girls.

The arguments defendant posed above were part of his attempt to establish that the probative value of the other-acts evidence was substantially outweighed by the danger of unfair prejudice, MRE 403.[5] Because none of these arguments has merit and because the probative value

---

[4] Defendant acknowledges that he first sexually assaulted NW the day before her 13th birthday.

[5] "All evidence offered by the parties is 'prejudicial' to some extent, but the fear of prejudice does not generally render the evidence inadmissible." *People v Mills*, 450 Mich 61, 75; 537 NW2d 909

of the other-acts evidence to show propensity was substantial, we conclude that the evidence was admissible under MCL 768.27a. Accordingly, defense counsel was not ineffective for stipulating to the admission of the other-acts evidence. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").[6]

## D. ADMISSION OF JAIL PHONE CALL

Defendant next argues that he was denied the effective assistance of counsel because trial counsel failed to challenge the admission of the phone call that defendant made to DR while he was in jail. Defendant claims that defense counsel should have challenged the phone call as inadmissible under MRE 401 and MRE 403. We disagree.

At trial, the prosecution introduced evidence of the phone call between DR and defendant. The prosecution also had a transcript of the conversation entered into evidence. During the phone call, defendant repeatedly asked DR to have his baby. He also repeatedly asked DR whether she still loved him and told DR that he still loved her. Additionally, defendant asked DR whether there was another man in her life.

Defense counsel's failure to object to the admission of evidence regarding the jail phone call did not constitute deficient performance because the phone-call evidence was admissible. Failure to voice a futile objection does not amount to ineffective assistance of counsel. *Ericksen*, 288 Mich App at 201. MRE 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Generally, relevant evidence is admissible. MRE 402. But relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading

---

(1995). MRE 403 prohibits the admission of marginally probative evidence that will likely be given undue weight—that is, "evidence which is minimally damaging in logic will be weighed by the jurors substantially out of proportion to its logically damaging effect." *Id*. at 75-76 (quotation marks and citation omitted). Here, the other-acts evidence was more than marginally probative and more than minimally damaging in logic.

[6] This issue came up briefly on remand. Defense counsel, however, could not recall exactly why he stipulated to the admission of the other-acts evidence although it may have been for strategic purposes, such as precluding "a bunch of other people to come testify from the past." In his supplemental brief on appeal, defendant complains that trial counsel "was unaware of the value of objecting just for the sake of preserving the issue for appeal." We disagree with the theory that defense attorneys should raise objections and challenges on evidentiary issues and not stipulate to evidentiary matters involving plainly admissible evidence simply to preserve appellate arguments. Counsel was not ineffective for stipulating to the admission of the other-acts evidence, nor was there any prejudice, assuming deficient performance, in light of the fact that the evidence was admissible.

the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403.

In this case, the jail phone call was relevant. The phone call was admitted during DR's testimony about the sexual abuse she had endured. Although DR was above the age of consent at the time defendant made the phone call, the call was still relevant because it provided further credibility to other evidence that defendant sexually abused DR as a minor. A reasonable interpretation of the phone call is that there had been an earlier or ongoing improper relationship between defendant and DR.

Additionally, the probative value of the phone call was not "substantially outweighed by the danger of unfair prejudice . . . ." MRE 403. The phone call was highly probative as support for DR's allegations that defendant sexually abused her when she was still below the age of consent. As discussed earlier, DR's testimony was properly admitted as other-acts evidence pursuant to MCL 768.27a. The phone call was especially probative in this case because there was no physical evidence linking defendant to the victim's sexual assaults and no third-party eyewitness claimed to have seen the sexual abuse. See *Watkins*, 491 Mich at 487-488. The other-acts evidence revealed defendant's propensity to engage in sex with underage girls, and evidence of the phone call gave additional weight to the propensity evidence. Additionally, the evidence was not unfairly prejudicial. "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998). The phone call was more than marginally probative, and in light of DR's testimony regarding the sexual abuse, evidence of the phone call was corroborative in nature, alleviating any concerns of the call itself being given undue or preemptive weight. Therefore, the phone call was admissible; any objection would have been futile, and defense counsel's failure to object did not fall below an objective standard of reasonableness.

## E. STATUS AS A REGISTERED SEX OFFENDER

Defendant next contends that he was denied the effective assistance of counsel because trial counsel failed to object to references made during the trial to his status as a registered sex offender. Given our holding that the other-acts evidence was admissible, including evidence of defendant's prior CSC-I conviction, defendant's status as a registered sex offender would have in all likelihood been presumed by the jury upon learning of the CSC-I conviction even had there been no express mention that he was a registered sex offender. Accordingly, defendant cannot establish the requisite prejudice for purposes of the claim of ineffective assistance of counsel. Moreover, we cannot find deficient performance by defense counsel for his failure to object. In light of the fact that the jury would learn that defendant was a convicted sex offender, defense counsel, playing the hand that he was dealt, decided to use the testimony of defendant's status as a registered sex offender to support a theory that defendant was unfairly and wrongly targeted simply because he was a registered sex offender: He was an easy person to blame. This was a reasonable strategy under the circumstances. Although the jury plainly rejected the theory, this does not mean that defense counsel's performance fell below an objective standard of reasonableness. See *People v Williams*, 240 Mich App 316, 332; 614 NW2d 647 (2000) ("The

fact that the strategy chosen by defense counsel did not work does not constitute ineffective assistance of counsel.").[7]

## F. EXPERT WITNESS TESTIMONY

Defendant next maintains that he was denied the effective assistance of counsel because trial counsel failed to question expert witness Thomas Cottrell[8] about the term "confabulation." Defendant claims that if defense counsel would have questioned Cottrell about confabulation, "the jury could have validated [the victim's] story of sexual assault while at the same time agreeing that, based on her confusion, that it may have been someone other than Thomas Casson." Defendant defines confabulation "as a disturbance in memory where someone fills in the blanks of memory and then presents it as genuine memory." Defendant asserts that confabulation "is distinguished from lying as there is no intent to deceive and the person is unaware the information is false."

In our remand order, we directed the trial court to consider "defendant's argument that he received ineffective assistance of trial counsel because trial counsel failed to question Thomas Cottrell . . . regarding memory." *Casson*, unpub order. The remand order further provided:

> Regarding the . . . argument, defendant must first establish, and the trial court shall rule on, whether Cottrell would have been qualified to answer any questions about memory within his field of expertise. Defendant shall also make a record of what questions he believes should have been asked, and he shall establish how Cottrell would have responded to those questions.

Cottrell testified at the evidentiary hearing on remand. Appellate counsel for defendant asked a number of extensive leading questions, without objection. She elicited Cottrell's opinions on matters concerning memory and confabulation,[9] which Cottrell described as unintentional lying in the process of filling in memory gaps to connect disjointed memories. Cottrell stated that he had never specifically testified in the area of confabulation, noting that "it has not come up in my decades of testimony." When asked whether he had ever been qualified as an expert in child memory, Cottrell responded, "I have been qualified—the closest that I think that I would get would be a qualification to be an expert in child sexual abuse dynamics, which include child memory;

---

[7] This issue also briefly arose on remand, but defense counsel did not recall references at trial to defendant's being a registered sex offender. In his supplemental brief on appeal, defendant does not offer any new argument, let alone one that undermines our ruling on this matter.

[8] Cottrell testified for the prosecution as an expert in child sexual abuse. Specifically, he testified about why children disclose sexual abuse and the timing of their disclosures. Afterward, Cottrell testified about typical characteristics of sex offenders and the process by which they find their victims. After the prosecution finished questioning Cottrell, defense counsel declined to engage in cross-examination.

[9] This appears to have been appellate counsel's method of complying with the remand order.

probably the closest that I have been qualified to that." Cottrell had not examined any information regarding the specifics of the victim's claims in this case.

When defendant's appellate counsel was asked by the trial court about her position regarding Cottrell, she responded:

Well, he certainly seems to have a very good lay person ability or understanding of childhood memory, but he is, technically, not an expert in childhood memory. He does not hold himself out as an expert on memory. He says that memory has, in part, some of this testimony on the dynamics of child sexual abuse, but in terms of educating a jury, I don't think that he has the qualifications.

Again, this was defendant's attorney on remand, seemingly waiving the issue presented to us. See *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000).

The trial court ruled that it would have allowed trial counsel to have posed the general questions on memory that appellate counsel asked Cottrell at the evidentiary hearing on remand, yet the court also found that Cottrell was not an expert in the area of "memory" and could not have given an opinion on whether the victim's memory was accurate. The latter point is beyond dispute and self-evident.

In his supplemental brief on appeal, defendant argues that had trial counsel cross-examined Cottrell regarding memory, the jury would have learned that memory changes over time, that memories can rapidly and continuously decay and may be covertly contaminated by suggestive influence, that memories are potentially vulnerable to distortion, contamination, and falsification at each step, and that traumatic memory can decay just as any other kind of memory.

We reject defendant's argument that reversal is warranted on the basis that trial counsel should have cross-examined Cottrell regarding confabulation and memory. First, we are puzzled with respect to the trial court's and appellate defense counsel's view that Cottrell could have answered questions on memory while at the same time concluding that he was not an expert on memory. It is an inconsistent position. Thus, setting aside the issue of waiver, defendant has not established deficient performance by trial counsel. Moreover, defendant has simply not demonstrated that had trial counsel elicited testimony from Cottrell on cross-examination and made the general points on memory set forth in defendant's supplemental brief on appeal that there would have been a reasonable probability that the results of the proceeding would have been different. *Carbin*, 463 Mich at 600. In the supplemental brief on appeal, defendant makes no connection between Cottrell's testimony concerning the general shortcomings in memories and the circumstances surrounding the victim in this case.

### III. STANDARD 4 BRIEF

Defendant raises four issues in his Standard 4 brief. He first argues that he was denied his right to an impartial jury because the trial court failed to adequately voir dire three jurors. We have examined the record, and the trial judge, who conducted the voir dire, thoroughly questioned the jurors at issue in an effort to uncover any bias and to determine whether each juror could be fair and impartial, eliciting responses that indeed revealed that each juror could be fair and impartial. See *People v Tyburski*, 445 Mich 606, 619; 518 NW2d 441 (1994) ("The purpose of

voir dire is to elicit enough information for development of a rational basis for excluding those who are not impartial from the jury"; "potential jurors are questioned in an effort to uncover any bias they may have that could prevent them from fairly deciding the case.").

Defendant also argues that he was denied the effective assistance of counsel because defense counsel failed to question and use peremptory challenges on the same three jurors. Because the trial court properly conducted voir dire of the three jurors, it was unnecessary for defense counsel to further question them on their potential biases. See MCR 6.412(C)(2) ("The court may conduct the examination of prospective jurors or permit the lawyers to do so."). Additionally, with respect to defense counsel's failure to exercise peremptory challenges with regard to the three jurors, we find reversal unwarranted. In *Unger*, 278 Mich App at 258, this Court explained:

> We conclude that defendant's trial counsel was not ineffective for failing to challenge the potential juror in question. Perhaps the most important criteria in selecting a jury include a potential juror's facial expressions, body language, and manner of answering questions. However, as a reviewing court, we cannot see the jurors or listen to their answers to voir dire questions. For this reason, this Court has been disinclined to find ineffective assistance of counsel on the basis of an attorney's failure to challenge a juror.

> A lawyer's hunches, based on his observations, may be as valid as any method of choosing a jury. As explained earlier, lead defense counsel was a capable, experienced attorney. He has tried countless criminal cases. On the basis of his experience, lead trial counsel surely believed that he had attained a reasonable, fair, and honest jury. We will not substitute our judgment for that of defendant's counsel, nor will we use the benefit of hindsight to assess counsel's performance. Defendant is entitled to no relief on this issue. [Quotation marks and citations omitted.]

Here, we have no basis in the record to question defense counsel's decision not to exercise peremptory challenges with respect to the three jurors.

Defendant next contends that the trial court improperly instructed the jury. Defendant argues that the instructions were insufficient to ensure unanimity on each of the CSC-I charges. Defendant criticizes the lack of specificity in the jury instructions with respect to unanimity.

In *People v Gadomski*, 232 Mich App 24, 30; 592 NW2d 75 (1998), this Court addressed the requirement of jury unanimity, observing:

> Criminal defendants are guaranteed a unanimous jury verdict under the state constitution. Consequently, trial courts are required to give proper instructions regarding the unanimity requirement. In some circumstances, a general unanimity instruction . . . is not adequate to ensure a defendant's right to a unanimous jury verdict. For instance, the Michigan Supreme Court has held that when the prosecution offers evidence of multiple acts by a defendant, each of which would satisfy the *actus reus* element of a single charged offense, the trial court is required

-13-

to instruct the jury that it must unanimously agree on the same specific act if the acts are materially distinct or if there is reason to believe the jurors may be confused or disagree about the factual basis of the defendant's guilt. [Citations omitted.]

In this case, a general unanimity instruction was adequate because the prosecution charged two separate acts of penetration in support of two separate charges of CSC-I, not multiple acts going to a single charge. In his closing argument, the prosecutor indicated that there were two counts, the first pertained to the first act of sexual intercourse where defendant helped search the victim's bedroom for the Nintendo DS before assaulting her, and the second concerned the sexual assault during which Josh entered the room and took pictures.[10] The trial court instructed the jury that "[a] verdict in a criminal case must be unanimous," which meant that "in order to return a verdict, it is necessary that each one of you agrees on that verdict." Additionally, the trial court informed the jury as follows regarding defendant's being charged with two counts of CSC-I:

> The defendant is charged with two counts of criminal sexual conduct first degree. These are separate crimes and the prosecutor is charging that the defendant committed both of them. You may consider each crime separately in light of all the evidence in the case. You may find the defendant guilty of both or either of these crimes or not guilty.

When the trial court instructed the jury on the elements of the two counts, it simply repeated itself on each count without indicating the nature of any particular allegations pertaining to the counts. The verdict form contained the two counts, but it did not identify the conduct associated with each count.

Although it would have been preferable if the trial court had provided some clarification with respect to the alleged acts forming the basis of each CSC-I count, we conclude that the prosecutor's remarks during opening statements and closing arguments, which were not contradicted at all by the court or defense counsel, clearly distinguished for the jurors the factual basis for the two counts. Accordingly, a general unanimity instruction was sufficient.[11] We also reject defendant's associated argument that defense counsel was ineffective for failing to challenge the general unanimity instruction. See *Ericksen*, 288 Mich App at 201 ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

Defendant also argues that the trial court erred by failing to provide the jury with final written jury instructions in violation of MCR 2.513(N)(3). Defendant, however, fails to provide

---

[10] The prosecutor gave this same explanation of the two charges during his opening statement.

[11] The trial court, apparently by mistake, informed the jury that it *may* consider each crime separately instead of informing it that it *must* consider each crime separately. See M Crim JI 3.20. This was an error that could potentially have resulted in a new trial. The trial court's error, however, does not support defendant's greater contention that a specific unanimity instruction was required in this case. The general unanimity instruction was sufficient because the prosecution did not present multiple acts as proof of the *actus reus* of a particular CSC-I charge.

any evidence in support of this contention. Additionally, the record appears to indicate that the trial court provided the jury with written instructions. The trial court repeatedly told the jury that it would receive written jury instructions, and the lower court record contains written jury instructions. The trial court's oral instructions were all covered and reiterated by the written instructions. We conclude that reversal is unwarranted on this issue.

Defendant also maintains that he was denied the effective assistance of counsel because defense counsel failed to call AE as an exculpatory witness. The record, however, is devoid of any indication of AE's potential testimony. See *People v Putman*, 309 Mich App 240, 249; 870 NW2d 593 (2015). Additionally, nothing in the record suggests that AE's testimony would have been favorable to defendant. Because defendant fails to establish the necessary factual predicate for his claim, the argument necessarily fails. *Id.*

Finally, defendant contends that cumulative error on the issues raised in his Standard 4 brief deprived him of a fair trial. Because there was only one error which does not require reversal, "a cumulative effect of errors is incapable of being found." *People v Mayhew*, 236 Mich App 112, 128; 600 NW2d 370 (1999).

We affirm.

/s/ Amy Ronayne Krause
/s/ Jane E. Markey
/s/ Stephen L. Borrello

-15-